[No. C063449. Third Dist. Mar. 18, 2010.]

K.C., Petitioner, v.
THE SUPERIOR COURT OF TRINITY COUNTY, Respondent;
TRINITY COUNTY HEALTH AND HUMAN SERVICES et al., Real
Parties in Interest.

**COUNSEL**

James H. Dippery, Jr., for Petitioner.

No appearance for Respondent.

No appearance for Real Parties in Interest.

**OPINION**

**SIMS, Acting P. J.**—Petitioner K.C., mother of the minor, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) to vacate the orders of the juvenile court made at the disposition hearing which denied reunification services and set a Welfare and Institutions Code section 366.26 hearing (undesignated section references are to the Welfare and Institutions Code). Petitioner argues the court abused its discretion in denying her services. We shall deny the petition and vacate the previously ordered stay of the juvenile court proceedings.

FACTS

The newborn minor was removed from petitioner's custody in September 2009. The minor was at risk of neglect from petitioner, who had a history of addiction and had failed to reunify with the minor's half siblings. The minor was also at risk of sexual abuse because the father had a conviction for violation of Penal Code section 288, subdivision (a), involving a five-year-old child. Petitioner was aware of the father's conviction but did not appear to recognize the danger he posed to the minor. The mother had been counseled not to smoke while pregnant with the minor due to the negative effects her smoking had on a half sibling, but petitioner did not stop smoking.

According to reports, a half sibling born in 2003 had complications due to withdrawal from caffeine and nicotine. Petitioner's continued abuse of nicotine was a factor which led to her neglect of the half siblings and to termination of her parental rights in 2005. Despite warnings to petitioner

about smoking and efforts to assist her in quitting, this minor was also born testing positive for nicotine. For several months prior to the minor's birth, service providers counseled petitioner on the effects of smoking on her fetus and on stopping smoking, and as early as May 2009 petitioner was asked to participate in Alcohol and Other Drug Services (AODS) to address her nicotine addiction. Petitioner was observed smoking during pregnancy; she provided positive tests for nicotine in July and August 2009 but minimized the effects of her smoking on the minor. Petitioner dismissed the importance of her ongoing use of nicotine, noting she had reduced her consumption and was smoking only organic tobacco. Petitioner insisted she did not need the AODS programs but continued to test positive for nicotine.

In the half siblings' case, evidence of petitioner's neglect of her children was based, in part, on her behavior which put her own needs, including smoking, ahead of their needs, i.e., she left the infant half sibling unattended to go outside and smoke, neglecting the infant's care, and ignored the infant's distress to attend to her own comfort first. A psychological evaluation in the prior case concluded petitioner was caffeine and nicotine dependent. The evaluation noted that petitioner rationalized her neglect and laziness and resisted taking responsibility for herself or the half siblings.

Following the conclusion of the half siblings' case in the termination of her parental rights, petitioner continued to abuse nicotine despite ongoing efforts by service providers, resulting in the minor's positive test for nicotine at birth. Additionally, the father's probation officer did not consider petitioner a suitable responsible adult to supervise the father's contact with children because she had a history of neglecting her children and of being molested as a child yet chose the father as a partner.

According to the disposition report, petitioner has had years of therapy and parenting services but has not been able to overcome her lack of motivation or to increase her skills and shows little benefit from either therapy or parenting classes. In May 2009, petitioner and the father agreed to do services, but did not contact the social worker, sign a voluntary plan, or provide verification of what they did on their own. Both parents were resistant to services. The minor will continue to need monitoring for delays due to nicotine exposure but is currently not showing any difficulties.

At the jurisdiction hearing in November 2009, the social worker testified petitioner's fingers and teeth were always stained from tobacco. The social worker agreed that quitting smoking was not a service objective of the

previous dependency, but smoking was related to lack of supervision of the half siblings, which supported a conclusion that petitioner was not taking responsibility for her actions as required. Part of the concern in the prior case was that the minors suffered from reactive attachment disorder due to petitioner's dependence on caffeine and nicotine which took precedence over child care. The social worker testified petitioner did not believe she had a problem with smoking in the prior case and continued to smoke while pregnant with the minor, although the issue was discussed with her frequently.

Petitioner testified she did smoke at least five or six hand-rolled cigarettes a day. Petitioner further testified she cut down smoking when she knew she was pregnant. She stated she had discussed quitting with her home worker and had gotten a kit which she used with some success but relapsed. Petitioner was aware the minor's father was a sex offender and she was in a 12-week chaperone class, which she started before the minor was born, to teach her how to make sure nothing could happen to a child living with them.

The court sustained the petition, noting that petitioner had a long history of nicotine abuse, was made aware of the dangers of smoking, and chose to do nothing about it. The court cited evidence of petitioner's tobacco-stained fingers, the minor's positive test for nicotine at birth, and petitioner's ongoing positive tests for nicotine as indicative of failure to protect the minor and noted it was consistent with the prior psychological evaluation that petitioner rejected assistance and lacked commitment to her children.

At disposition, petitioner testified she tried to contact the social worker when she found she was pregnant because she was not sure she wanted to continue with the pregnancy if it was going to result in another dependency proceeding. She did try to quit smoking by reducing the size of her hand-rolled cigarettes and by getting information on quitting. She also got into a women's therapy group to deal with stress. Petitioner did not go to AODS because her group therapy facilitator did not know if they would accept her and AODS clients she talked to thought "they would probably laugh at someone that came in there just for an [sic] nicotine addiction." The court denied services to petitioner finding she came within the provisions of section 361.5, subdivision (b)(10) and (11). The court found petitioner rejected treatment for nicotine addiction in the prior dependency and while pregnant with the minor. The court stated petitioner's behavior said a lot about her willingness to comply with services and that it was not up to

petitioner to pick the plan she intended to follow. It was disturbing to the court that petitioner was unsure whether to keep the minor rather than take effective steps to become a responsible parent.

## DISCUSSION

Petitioner argues the juvenile court abused its discretion in denying her services pursuant to section 361.5, subdivision (b)(10) and (11), because she did make reasonable efforts to treat the problems which led to the removal of the half siblings.

■ When a child is removed from parental custody, the juvenile court must order reunification services to assist the parents in reuniting with the child. (§ 361.5, subd. (a).) However, if certain of the circumstances set forth in section 361.5, subdivision (b), are established, "the general rule favoring reunification is replaced by a legislative assumption that offering [reunification] services would be an unwise use of governmental resources." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793]; see *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744 [110 Cal.Rptr.2d 828, 28 P.3d 876].)

■ As relevant here, services may be denied if the court finds by clear and convincing evidence either "[t]hat the court ordered termination of reunification services for any . . . half siblings of the child because the parent . . . failed to reunify with the . . . half sibling after the . . . half sibling had been removed from that parent . . . and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . half sibling of that child from that parent . . . ." or "[t]hat the parental rights of a parent over any . . . half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . half sibling of that child from the parent." (§ 361.5, subd. (b)(10) & (11).)

The "reasonable effort to treat" standard "is not synonymous with 'cure.' " (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464 [118 Cal.Rptr.2d 118].) The statute provides a "parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings." (*In re Harmony B.* (2005) 125 Cal.App.4th 831, 843 [23 Cal.Rptr.3d 207].) To be reasonable, the parent's efforts must be more than "lackadaisical or half-hearted." (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 99 [42 Cal.Rptr.3d 504].)

In this case, the problems which led to removal of the half siblings were severe neglect resulting from petitioner's lack of concern about their welfare and characterized by petitioner's extreme dependence upon nicotine which she pursued to the exclusion of caring for the half siblings' needs. Petitioner was provided services to address her neglect and inadequate parenting, as well as her dependence upon nicotine. However, as the psychological evaluation concluded, petitioner resisted taking responsibility for herself or her children. One of the minors in the prior case was born dependent on nicotine and suffered withdrawal symptoms.

In the current matter, the county health and human services department attempted to intervene early in petitioner's pregnancy by counseling her about quitting smoking and referring her to services, including AODS. Petitioner, despite having lost custody of her other children for neglect based in part on her nicotine dependence, continued to assert that she was not addicted and did not need the AODS services. Her inability to recognize or appreciate the risk to the minor posed by the minor's sex offender father was also a continuance of the pattern seen in the prior case of lack of responsibility or concern for the minor's needs over her own. Although the social worker and others continued to counsel petitioner about the negative impact of smoking on her fetus, petitioner did not take serious steps to stop smoking. She continued to smoke, tested positive for nicotine and, although she testified she had decreased her use of tobacco, the stains on her fingers and teeth suggested otherwise. She did not even go to the AODS program to see if the program could address her problem or make a referral to a more tailored service. Instead, she relied on the opinions of AODS clients that her nicotine dependence would not be taken seriously. She declined to sign a case plan or provide the social worker with evidence of her progress. While pregnant, she entered a 12-week class which addressed sex offender issues and keeping children safe, but by the jurisdiction hearing (more than two months after the minor was born) had not yet completed the class and was less than halfway through it. The father's probation officer concluded she was not a suitable supervisor of children in the father's presence even if she completed the training. Overall, her efforts to address the issues which caused her to neglect the half siblings were, at best, lackadaisical. In short, the issues which led to the prior removal remained and had actually worsened due to her relationship with the minor's father and her inability to recognize the risk he posed to the minor.

 The juvenile court did not abuse its discretion in denying petitioner services pursuant to section 361.5, subdivision (b)(10) and (11).

## DISPOSITION

The petition for extraordinary writ is denied. The stay of the juvenile court proceedings previously imposed is hereby vacated.

Cantil-Sakauye J., concurred. Raye J., concurred in the result.