Filed 5/31/13  In re I.M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re I.M., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D063298 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. J517887B) |
| JESSICA G., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Katherine A. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Erica R. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

Jessica G. appeals following the jurisdictional and dispositional hearing in the juvenile dependency case of her son, I.M. Jessica contends that the court erred in denying her reunification services. We affirm.

BACKGROUND

Jessica began using marijuana when she was nine years old, around the time that her stepfather began sexually abusing her. She began using methamphetamine when she was 11 years old. Jessica became a dependent of the juvenile court in 2007, when she was 15 years old, as a result of physical and sexual abuse and neglect. She received services as a dependent child but did not cooperate with the Agency. She ran away from her foster placement in 2007, when she was in the 10th grade, and dropped out of high school. In 2008, while still absent from her placement, Jessica gave birth to her daughter E.J.

In July 2010, the San Diego County Health and Human Services Agency (the Agency) filed a petition on behalf of one-year-old E.J. The petition alleged that E.J. had bruises on her ears, consistent with slapping; bruises on her right thigh, arms, left hand and left shoulder; diffuse bruising on her buttocks; and patterned bruises on her right arm consistent with a finger mark.

Jessica admitted that she had caused E.J.'s injuries and that she had physically abused E.J. for approximately one month. Jessica said that she had heard her stepfather's voice and this had caused her to become frustrated with E.J. In September 2010, the

2

court made a true finding on E.J.'s petition, removed her from Jessica's custody and granted Jessica reunification services.

Between July 2010 and May 2012, Jessica was offered individual therapy, including anger management; drug treatment; and parenting education. She received inpatient substance abuse treatment from October 2010 until January 2011, when she left the program. In February 2011, Jessica was admitted to another program, but failed to attend. In May, Jessica attended the Parent Care Program for a few weeks, then quit. That month, the court found that Jessica had made progress in services.[1]

In July 2011, Jessica began therapy. In September 2011, she entered the CRASH (Community Resources And Self Help) inpatient drug treatment program, which included parenting classes. In January 2012, Jessica completed the CRASH program. Two weeks later, she resumed using marijuana. Jessica was terminated from the CRASH aftercare program for missing sessions. In February, while pregnant with I.M., Jessica refused to submit to a drug test. In March, while still pregnant, Jessica tested positive for marijuana and amphetamines. In April, Jessica's therapy was terminated due to her lack of commitment. In May, the social worker contacted Jessica after having been unable to reach her for several months. Jessica told the social worker that she had been involved in domestic violence with Tony M., a gang member who used drugs, and falsely reported that she had suffered a miscarriage. Jessica agreed to resume drug treatment, but failed to do so.

---

[1] The only record of the finding, a minute order, states: "PARENTS HAVE (MADE SOME) made substantive progress with the provisions of case plan."

By May 2012, the Agency had made services available to Jessica for most of the preceding five years. Because her participation in services had been inconsistent and she had failed to demonstrate that she had addressed protective issues, on May 31 the court terminated services at the 12-month review hearing in E.J.'s case. On the day of the hearing, the social worker asked Jessica to speak to a substance abuse specialist. Jessica said that she would do so and that she would resume attending Narcotics Anonymous and Alcoholics Anonymous meetings. In August 2012, she had two negative drug tests. In October, when Jessica gave birth to I.M., he tested positive for amphetamines and marijuana. Jessica was living with I.M.'s father, Tony, with whom she had a history of using drugs. Jessica agreed to voluntary services, but then failed to appear for a drug test.

On November 2, 2012, the Agency filed a dependency petition on behalf of I.M. (Welf. & Inst. Code, § 300, subd. (j).)[2] The petition alleged that Jessica had subjected I.M.'s sister, E.J., to serious physical harm, as described above. Jessica had failed to complete her reunification plan in E.J.'s case. Jessica had had a positive drug test in March and had refused to test for the Agency. Tony had recently used heroin and marijuana and had been arrested on drug charges in October.

I.M. was detained with the paternal grandparents. Before the November 5, 2012 detention hearing, the Agency referred Jessica to an in-home parenting course. Jessica met with the parenting service provider, but subsequently failed to return the provider's calls. On November 7, the Agency mailed Jessica a list of therapists. On November 8,

_____

[2]     All further statutory references are to the Welfare and Institutions Code.

4

the court terminated parental rights in E.J.'s case. On November 9, Jessica admitted that she had been a perpetrator as well as a victim in the domestic violence with Tony. She acknowledged that she angered easily and said that she did not "know how to deal with anger." On November 13, the social worker told Jessica that she could obtain substance abuse treatment referrals at the courthouse.

On November 15 or 16, 2012, Jessica and Tony had an altercation outside the paternal grandparents' home. On November 20, Jessica had a negative drug test. On November 24, she reported to law enforcement officers that Tony had punched her. A deputy sheriff offered Jessica domestic violence resources, but Jessica said that she did not need them. Jessica said that she was going to obtain a restraining order, but did not do so. A detective called her to follow up on the case, but Jessica did not return the telephone call.

On December 11, 2012, the social worker gave Jessica bus tokens and a list of therapists, and again provided the contact information of the parenting service provider. On December 27, during an intake appointment at McAllister Institute, Jessica tested positive for amphetamines and marijuana. On January 15, 2013, the social worker attempted to contact Jessica at the KIVA residential treatment facility, and a counselor said that she would give Jessica a message. The record does not state whether Jessica had in fact entered KIVA and, if so, how long she had been there and whether she was progressing.

On January 16, 2013, the court entered true findings on I.M.'s dependency petition. The court ordered I.M. removed from Jessica and Tony's custody (§ 361, subd.

5

(c)(1)), and placed with a relative. The court granted Tony reunification services and denied Jessica services (§ 361.5, subd. (b)(10) & (11)), noting that "the Agency has gone above and beyond trying to offer [Jessica] services [a]nd that's been unsuccessful up until now."

DISCUSSION

"Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence," that the court terminated reunification services for a sibling or half sibling because the parent failed to reunify after the sibling's or half sibling's removal (§ 361.5, subd. (b)(10)), or the parent's rights over a sibling or half sibling were terminated (*id*., subd. (b)(11)), and that, in either situation, the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ."[3] (*Id.*, subd. (b)(10) & (11).) "The 'reasonable effort to treat' standard 'is not synonymous with "cure." ' [Citation.] The statute provides a 'parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' [Citation.]" (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) We review the court's findings for substantial evidence. (See *A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)

---

3    If a parent proves, by clear and convincing evidence, that reunification is in the child's best interests, the court may grant services even if section 361.5, subdivision (b)(10) and (11) apply. (*Id*., subd. (c); *In re William B.* (2008) 163 Cal.App.4th 1220, 1227.) Jessica does not contend that reunification is in I.M.'s best interests.

6

This appeal is frivolous. It is clear that there is substantial evidence to support the conclusion that, after the May 31, 2012, termination of services in E.J.'s case, Jessica made no reasonable effort to treat the problems that led to E.J.'s removal. In fact, by the time of the January 16, 2013, dispositional hearing in the instant case, Jessica had done virtually nothing to resolve her drug problem or her domestic violence and anger issues. When she gave birth to I.M. in October 2012, he tested positive for amphetamines and marijuana. The Agency offered Jessica voluntary services, including an in-home parenting course, therapy and substance abuse treatment. Jessica failed to appear for a drug test and failed to return calls from the parenting service provider. There is no indication that Jessica made any attempt to enter therapy. Instead, she remained in a violent relationship, refused an offer of domestic violence resources and did not obtain a restraining order or cooperate with law enforcement officials. Ten days before the dispositional hearing, Jessica tested positive for amphetamines and marijuana.

We reject Jessica's argument that any efforts that she may have made while receiving services in E.J.'s dependency can be counted as "reasonable efforts" under section 361.5, subdivision (b)(10) and (11). Those criteria specifically refer to "[subsequent]" efforts, i.e., subsequent to the termination of services (*id.*, subd. (b)(10)) or parental rights (*id*., subd. (b)(11)) in the prior dependency. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 98, 108.)

7

DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.