Filed 3/10/14  T.T. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| T.T., | |
| Petitioner, | E060179 |
| v. | (Super.Ct.No. SWJ110078) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John M. Monterosso, Judge.  Petition denied.

Daniel L. Vinson, for Petitioner.

No appearance for Respondent.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Real Party in Interest.

1

Petitioner T.T. (father), the father of S.T. (minor), seeks writ review of the juvenile court's orders made at the jurisdiction and disposition hearing denying him reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1] He contends that (1) there was insufficient evidence to sustain the section 300, subdivisions (b) and (j) allegations; (2) the juvenile court improperly denied his request for placement of minor under sections 361, subdivision (c), and 361.2, subdivision (a); and (3) there was insufficient evidence to deny him reunification services under section 361.5, subdivision (b)(10) and (11). These contentions lack merit and, consequently, we deny father's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Minor was taken into protective custody soon after her birth in August 2013, due to concerns about her mother's behavior.[2] Although mother's drug screen was negative, she had a history of abusing marijuana and methamphetamine. It was also discovered that mother's parental rights had been terminated as to another child.

Mother did not provide father's correct address to the Riverside County Department of Public Social Services (department). Father did contact the social worker, but was evasive when questioned about his criminal history, the spelling of his name, and date of birth. He admitted he had "lost" other children because of their mothers' drug use while he was in prison.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Mother is not a party to this appeal.

2

A dependency petition was filed alleging that minor came within section 300, sections (b) and (j). At the detention hearing on August 16, 2013, the juvenile court found that the department made a prima facie showing to support these allegations. It authorized unsupervised, overnight and weekend visits, as well as family maintenance when deemed appropriate.

At the time, father was on probation for a July 2011 conviction for inflicting corporal injury. Probation was not set to expire until September 19, 2014. Father stated he was attending anger management classes as a term of probation and had completed 36 of 52 weeks. Father admitted a prior burglary conviction as well as a 2010 conviction for being under the influence of a controlled substance. Despite this conviction, father denied ever experimenting with controlled substances. On three occasions he failed to appear for drug tests requested by the social worker. He had been informed that failure to appear for a drug test would be considered a failed test.

The department assessed father's home and found that it met the "'minimum standards with working utilities, food, and a place for the child to sleep,'" and he had "'diapers, clothing, formula, a car seat, and a bassinet.'" Later, father moved and it was only after repeated inquiries by the social worker that he provided a copy of the lease.

Father visited minor on August 30 and September 8, 2013. Thereafter, the frequency of visits declined. He missed a visit on September 23 because he woke up late. On October 20, father showed up for a visit over two hours late and stayed for only 15 minutes. The caregiver did not hear from father about the visit scheduled for October 27.

The caregiver met with the social worker on October 31, 2013, expressing concern that father had been cancelling visits, some at the last minute. He again cancelled a visit at the last minute on November 10.

The social worker reported that father had failed to return her calls. Father explained that he rarely checked his voicemail and it might be full. He denied missing visits. The social worker repeatedly asked father for his new address, as well as documentation from his parenting and anger management classes. The only document father produced was a copy of the rental agreement.

An amended petition was filed November 19, 2013. It was alleged that minor was at risk of harm because father had a past involvement with Child Protective Services in San Diego, failed to participate in his case plan resulting in termination of his parental rights as to two children (allegation b-5). It was also alleged that minor was at risk in that father had an extensive criminal history including arrests and/or convictions for drug related offenses (allegation b-6). Minor was also alleged to be at risk of suffering the same neglect her two half siblings suffered (allegation j-1).

The caregiver had a friend accompany her to a visit on November 17 because she was concerned that text messages from father showed he was upset with her. Father was accompanied by a woman who held and fed minor, while father had little interaction with minor. Father was abrasive with the caregiver throughout the visit. At the end of the visit, father just walked away when the caregiver asked him about another visit.

The department recommended that reunification services be denied father based on concern for minor's safety due to father's prior criminal history, prior CPS history,

termination of parental rights as to minor's half siblings, and his failure to provide proof that he is clean and sober and able to provide a safe home environment. It was noted that father had failed to reunify with two of his older children. The juvenile court in San Diego found he was not entitled to services for his oldest child because of his incarceration; his parental rights to that child were terminated on February 3, 2009. Father's second child was born exposed to methamphetamine. Father was provided services, participated in a Team Decision Meeting, and initiated contact with counseling services and a parenting class. He had two visits with this child before he was arrested on a parole violation on October 17, 2010. He was released on December 16 and incarcerated again on January 4, 2011. He was out of jail for over three weeks before the review hearing but failed to contact the social worker. It is unclear if he had participated in any services. Services were terminated and by the time the section 366.26 hearing was held, father had again been incarcerated and was not scheduled to be released until March 2012. His parental rights were terminated as to the second child on November 3, 2011.

At the jurisdiction/disposition hearing in this case, it was stipulated that if father were called to testify he would testify as follows: "Currently, he's participating in a domestic-violence program. He has completed 49 out of 52 sessions. He has only three sessions left to complete. Father would testify that he is currently employed and earns an income. Father would testify that he's participating in parenting class. [He] has an appropriate home for the child and that a home evaluation was done and his home was found to be suitable. [He] is not currently abusing any controlled substances, and finally,

5

[he] has the means and ability to care for his child." The department further agreed to waive its right to cross-examine father.

The juvenile court sustained jurisdiction based on the allegations of the first amended petition as to allegations (b)(5), (b)(6), and (j)(2). The court commented: "Unless there are substantial changes made, history is likely to repeat itself. The fact that there is a past history with regard to father and having Child Protective Service case history and services terminated . . . does indicate a risk. The Petition will be sustained."

The court denied reunification services to father under section 361.5, subdivision (b)(10) and (b)(11). It noted that father's failure to complete a case plan and reunify with the other children was primarily based on the periods of incarcerations. The failure to stay free was no one's fault but father's. The court noted that father currently seemed to be living a crime-free life, but it was focusing on the underlying reasons for his past incarceration: domestic violence and drug use. While father had substantially completed a domestic violence program, the court was concerned that father had demonstrated very little ability to control himself as evidenced by his confrontational attitude with the department and the caregivers at all turns. He had not acted violently, but his conduct suggested that he learned very little with regards to anger management.

The juvenile court was troubled by the fact there was no evidence he participated in a drug program. It concluded the department had shown that father had failed to make subsequent reasonable efforts to correct the problems that led to the prior dependencies.

DISCUSSION

Father contends that there was insufficient evidence to sustain the jurisdictional findings. The burden of proof at the jurisdictional hearing is a preponderance of the evidence. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) As a reviewing court, of course, we do not reweigh the evidence, but review it in favor of the judgment. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) This means we do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) "The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence. [Citation.]" (*Ibid.*)

Father asserts that there is not substantial evidence to support a finding the history of the prior dependencies of his children or his criminal history poses a substantial risk of harm to minor.[3] He proclaims that he has been living a crime-free life, has appropriate housing, and substantially complied with a domestic violence class. His early visits with minor went well, and he is even participating in his parenting classes. In short he states he has turned his life around and, as a nonoffending parent, there is no danger that minor would be at risk in his custody. Although we do not presume that father will be incarcerated again, his past behavior in abusing drugs and domestic violence does have

_____

[3] Father also argues that there are no facts in the petition that indicated any current risk of harm to minor. However, the adequacy of the petition is irrelevant if the jurisdictional findings are supported by substantial evidence. (*In re Athena P.* (2002) 103 Cal.App.4th 617, 626.)

probative value in considering current conditions. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) This is especially true here because, as the juvenile court noted, father had failed to address the underlying problems, i.e., substance abuse and anger issues, that led to the termination of parental rights of two other children. Father's refusal to drug test and his confrontational and uncooperative attitude demonstrate that he had not really changed his life to the point that minor would not be at risk of harm. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1650.)

Father also challenges the juvenile court's order refusing to place minor with him, asserting that there was not clear and convincing evidence of detriment to minor. We disagree. There was no evidence that father could provide an appropriate home for minor. While the department had found father's first residence appropriate, he moved and failed to provide his new address so that that the home could be evaluated prior to the December hearing. He refused to drug test.[4] The many cancelled, late, and shortened visits show a shocking lack of commitment to maintain contact with minor. These factors, in addition to concerns about his volatile temperament, support the juvenile court's refusal to place minor with father.

Finally, father challenges the denial of reunification services under section 361.5, finding he came within the provisions of subdivision (b)(10) and (11). In both instances, the juvenile court need not order reunification services when it finds by clear and convincing evidence that the parent had not made reasonable efforts to treat the problems

---

[4] Father claims he tested on August 27, but he was not referred by the department to drug test for that date.

that led to the failure to reunify with a sibling or half sibling (§ 361.5, subd. (b)(10)) or termination of rights as to a sibling or half sibling (§ 361.5, subd. (b)(11)).

The "reasonable effort to treat" standard does not require the parent to cure the problem(s), but to work toward correcting them. "To be reasonable, the parent's efforts must be more than 'lackadaisical or half hearted.' [Citation.]" (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) Father's efforts here can only be characterized as lackadaisical and halfhearted at best, as epitomized by his efforts to visit with minor. While he substantially completed a domestic violence program, this was a term of his probation. He made no effort to comply with the department's requests for drug testing or provide information so that it could confirm whether he had a suitable home for minor. Substantial evidence supports the juvenile court's findings and order denying services to father.

## DISPOSITION

The petition for writ of mandate is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.

CODRINGTON
J.

9