Filed 7/18/14  In re Esteban N. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re ESTEBAN N., a Person Coming Under the Juvenile Court Law. | D065571 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J516955C) |
| v. | |
| ERICA N., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Edlene C. McKenzie, Judge.  Affirmed.


Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Erica N. appeals following the jurisdictional and dispositional hearing in the juvenile dependency case of her son, Esteban N. Erica contends the court erred by denying her reunification services. We affirm.

BACKGROUND

Erica has a longstanding history of mental illness, including a suicide attempt at age 10 and a suicide attempt as an adult. Erica also has a history of violence toward others. When Erica was nearly eight years old, she tried to kill her grandmother by putting rat poison in her grandmother's food. As a child, Erica attempted to throw a girl off a balcony. Erica has been hospitalized twice for psychiatric issues but has not received adequate mental health treatment. On at least one occasion, she refused treatment. Erica also has a history of untreated substance abuse.

In June 2002, when Erica was 17 years old, she gave birth to Isiah W. When Erica was approximately 18 years old, she began using methamphetamine. Erica reported that in 2006, Isiah's father killed him by drowning him in a bathtub.

In December 2007, Erica gave birth to S.G., who tested presumptively positive for methamphetamine at birth. The San Diego County Health and Human Services Agency (the Agency) filed a dependency petition for S.G. The petition alleged Erica had used methamphetamine and Vicodin since 2004, admitted using methamphetamine during the pregnancy and had no prenatal care. The court entered a true finding on the petition,

2

declared S.G. a dependent and ordered him removed from Erica's care. The court ordered six months of reunification services, including substance abuse treatment. In July 2008, the court terminated services. In November, the court terminated Erica's parental rights to S.G.

In July 2009, Erica gave birth to a baby girl. The Agency filed a dependency petition alleging Erica was unable and unwilling to care for the baby. Erica had had little prenatal care. She and the baby tested positive for methamphetamine. Erica denied using drugs during the pregnancy but had admitted using methamphetamine while pregnant with S.G. Erica had failed to reunify with S.G. and her parental rights to S.G. had been terminated. The court entered true findings, declared the baby a dependent and ordered her removed from Erica's care. The court did not order reunification services and terminated parental rights in December.

In June 2011, Erica was convicted of a drug-related offense[1] and placed on three years' probation. Meanwhile, she had become involved with Edward H., who was verbally and physically abusive. Erica claimed she stopped using drugs because she planned to become pregnant. When she discovered she was pregnant, she decided to leave Edward. Edward said he would kill Erica and the baby if Erica left. Erica separated from Edward in May 2013. She did not seek a restraining order. Esteban was born in November.

---

[1]    The Agency's report states Erica was convicted of "Disorderly Conduct:  Intox Drug/Alcohol."

3

By the time Esteban was born, Erica had not attended a drug treatment program. She claimed to have attended two Narcotics Anonymous (NA) meetings a week during most of her pregnancy, but admitted using methamphetamine during the first and ninth months.

Six days after Esteban was born, the Agency filed a dependency petition (Welf. & Inst. Code, § 300, subd. (b)).[2] The petition alleged he tested positive for amphetamine and/or methamphetamine and Erica tested positive for amphetamine/methamphetamine. Erica admitted using drugs and alcohol during the pregnancy. She had little prenatal care. She had a history of drug use. There had been two prior dependency cases for Esteban's half siblings who had been exposed to amphetamine/methamphetamine at birth. Erica denied needing drug treatment. She had not participated in treatment successfully. Edward had a history of drug use.

Esteban was detained in a foster home. At the November 19, 2013, detention hearing, the court ordered the Agency to give Erica voluntary referrals. On December 3, the social worker gave Erica a list of community resources and bus passes and told her about substance abuse treatment programs. Erica said she was willing to do anything to obtain Esteban's return, including participating in parenting classes and substance abuse treatment. In late December, Erica began attending Alcoholics Anonymous meetings. By early January 2014, she had attended 13 meetings. Erica claimed to have started substance abuse treatment at Casa de Milagros, with negative drug tests, and said Maria

_____

[2]     All further statutory references are to the Welfare and Institutions Code.

Lopez was her counselor.[3] Casa de Milagros personnel told the social worker that Erica was not a client and there was no employee named Maria Lopez. Erica then claimed Casa de Milagros personnel must have checked only the residential program. The social worker called Casa de Milagros again and was told there was a DUI program, a men's program and a residential program, but no outpatient program.

In January 2014, the court made a true finding on the petition and ordered Esteban removed from Erica's custody and placed in foster care. The court found that Edward was the biological father and ordered reunification services for him. The court denied Erica services (§ 361.5, subd. (b)(10) & (11)).

## DISCUSSION

"Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence," that the court terminated reunification services for a sibling or half sibling because the parent failed to reunify after the sibling's or half sibling's removal (§ 361.5, subd. (b)(10)), or the parent's rights over a sibling or half sibling were terminated (*id*., subd. (b)(11)), and, in either situation, the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ." (*Id*., subd. (b)(10) & (11).) "The 'reasonable effort to treat' standard 'is not synonymous with "cure." ' [Citation.] The statute provides a 'parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's

---

3        Erica was apparently referring to an outpatient program.

efforts must be more than 'lackadaisical or half-hearted.' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) We review the court's findings for substantial evidence. (See *A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)

As noted above, after S.G. was removed from Erica's care, she failed to reunify with him and the court terminated reunification services in July 2008. (§ 361.5, subd. (b)(10).) The court terminated Erica's parental rights to S.G. in November 2008 and to the baby girl in December 2009. (*Id.*, subd. (b)(11).) Erica does not challenge these facts, but asserts she "made significant progress leading up to her pregnancy [with Esteban] and through most of it[,] falling down near the end of that period."

Substantial evidence supports the conclusion that after the termination of services in S.G.'s case (§ 361.5, subd. (b)(10)), and after the termination of parental rights in his case and in the baby girl's case (*id.*, subd. (b)(11)), Erica did not make reasonable efforts to treat the problem that led to the removal of those two children, substance abuse. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 99, 108.) Erica has a long history of drug abuse. She received six months of reunification services in S.G.'s case, and after those services and parental rights were terminated, Erica continued to use drugs and made no effort to treat her substance abuse. Then, for more than four years after parental rights were terminated in the baby girl's case, Erica continued to use drugs and made no effort to treat her substance abuse, aside from her claimed attendance at NA meetings during her pregnancy with Esteban. Approximately six weeks after Esteban was detained, Erica began attending 12-step meetings. By the time of the jurisdictional and dispositional hearing in the instant case, she had been attending the meetings for less than a month and

had attended a total of 13 meetings. Erica said she was willing to participate in substance abuse treatment, then falsely claimed she had begun a treatment program. She did not stay in contact with the social worker and did not keep her promise to do better.

Erica contends it would have been in Esteban's best interests for her to receive reunification services because she had ongoing visits with Esteban, and Edward was receiving reunification services. Even if section 361.5, subdivision (b)(10) and (11) apply, the court may order services if a parent proves, by clear and convincing evidence, that reunification is in the child's best interests. (*Id.*, subd. (c); *In re William B.* (2008) 163 Cal.App.4th 1220, 1227.) "In determining the children's best interests, the 'court should consider "a parent's current efforts and fitness as well as the parent's history"; "[t]he gravity of the problem that led to the dependency"; the strength of the bonds between the child and the parent and between the child and the caretaker; and "the child's need for stability and continuity." ' [Citation.] '[A]t least part of the best interest analysis must be a finding that further reunification services have a likelihood of success. In other words, there must be some "reasonable basis to conclude" that reunification is possible before services are offered to a parent who need not be provided them.' [Citation.] [¶] 'A juvenile court has broad discretion when determining whether . . . reunification services would be in the best interests of the child under section 361.5, subdivision (c). [Citation.] An appellate court will reverse that determination only if the juvenile court abuses its discretion.' " (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164-1165, quoting *In re William B.,* at pp. 1228-1229.)

The court did not abuse its discretion by failing to conclude that Erica had shown that reunification with her was in Esteban's best interests. The order for services for Edward did not oblige the court to order services for Erica. (See *In re Jesse W.* (2007) 157 Cal.App.4th 49, 60.) Erica's efforts to ameliorate her drug abuse were trivial in light of her history. In the more than two months between the date of detention and the date of the jurisdictional and dispositional hearing, Erica visited Esteban only four times, and the visits were supervised.

The court did not err by denying Erica reunification services.

DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.