Filed 5/13/15  Jose H. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOSE H.,<br><br>        Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>        Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Real Party in Interest. | F071033<br><br>(Super. Ct. No. 12CEJ300251)<br><br><br>**OPINION** |
| MIRIAM M.,<br><br>        Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>        Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Real Party in Interest. | F071035<br><br>(Super. Ct. No. 12CEJ300251) |

## THE COURT*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Hilary A. Chittick, Judge.

---

\*    Before Levy, Acting P.J., Cornell, J., and Peña, J.

Elizabeth Diaz, Public Defender, and Douglas S. Feinberg, for Petitioner Jose H.

Heather A. Von Hagen, for Petitioner Miriam M.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and David F. Rodriguez, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

In this consolidated extraordinary writ petition (Cal. Rules of Court, rule 8.452),[1] we review the juvenile court's setting of a Welfare and Institutions Code section 366.26 hearing[2] as to two-year-old Jose, the son of petitioners Jose H. (father) and Miriam M. (mother). The juvenile court set the section 366.26 hearing after terminating petitioners' family maintenance services as to Jose's siblings and denying petitioners reunification services as to Jose under section 361.5, subdivision (b)(10) at a combined hearing. Petitioners contend there was insufficient evidence to support the juvenile court's denial of services order. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Petitioners are an unmarried intact couple with a child welfare history dating back to 2003 involving reports of child abuse and neglect. They are the parents of seven children, G.H.,[3] Jorge, Susana, Miguel, Elena, N.H. and Jose, who range in age from 20

---

[1]     On our own motion we consolidate the petitions in our case numbers F071033 and F071035.

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3]     We refer to minors with uncommon names by their initials in order to protect their identity.

2

years to two years, respectively. Jose is the sole subject of this petition.[4] Father and mother are Spanish speaking.

This case originated in Los Angeles County. In September 2010, the Los Angeles County Department of Children and Family Services (Los Angeles department) received a report that father was pushing and shoving mother in front of the children. The emergency response social worker found the home cluttered and extremely dirty. Father explained the family was under a great deal of financial stress. He had a back injury and was trying to support the family by selling cardboard he collected. The children were also a source of stress for father and mother. Miguel, then seven years old, is autistic and non-verbal and was in diapers. G.H. and Jorge were wards of the juvenile court under section 602. Their most recent offense at that time occurred in 2010 when they participated in the gang rape of a 12-year-old intoxicated female. The Los Angeles department referred mother and father for voluntary family maintenance services. However, they did not comply and their case was closed.

In February 2012, then 13-year-old Susana disclosed that father punched her in the face with his fist. Father denied striking Susana but six-year-old Elena said she saw father hit Susana and mother. She said she was afraid of father and mother because they also hit her.

In May 2012, the Los Angeles department filed an original dependency petition on behalf of G.H., Susana, Miguel, Elena and N.H. alleging mother and father's conduct placed the children at a substantial risk of serious physical harm and neglect. (§ 300, subds. (a) & (b).) The juvenile court ordered the children detained and released them to mother and father pending the next hearing.

---

**4**     Although mother's writ petition identified Miguel, Elena and N.H. as subjects of the writ petition, her appellate attorney expressly stated she was only challenging the denial of services order as to Jose.

3

In August 2012, a social worker made an unannounced visit to the home and observed bruises on mother's face, arm, chest and shoulder. Mother was then seven months pregnant with Jose. Mother accused G.H. and father of causing her bruises. The Los Angeles department took the children into protective custody. During a conversation with a social worker, father admitted striking Susana in the face.

In September 2012, the Los Angeles County Juvenile Court adjudged the children dependents after sustaining allegations that father struck Susana's face with his hands causing a bleeding laceration to her nose, that mother failed to protect her, and that mother and father's conduct placed all of the children at a substantial risk of physical harm.

In October 2012, the Fresno County Juvenile Court (hereafter "the juvenile court") accepted jurisdiction over the case after father and mother relocated the family to Fresno. In December 2012, the juvenile court ordered Susana, Miguel, Elena and N.H. removed from mother and father's custody and ordered mother and father to complete a parenting program, substance abuse, mental health and domestic violence evaluations and any recommended treatment, and submit to random drug testing. The court also ordered supervised visitation. The Fresno County Department of Social Services (hereafter "the department") placed the children in foster care.

Over the next year, mother and father participated in their services. They completed a parenting program and reportedly did well. They were evaluated for substance abuse services and only father required treatment which he completed. The department eliminated the drug testing requirement from their services plan after they consistently tested negative. Mother completed a safe group class at a women's shelter and father was participating in a 52-week child batterer's treatment program. Mother and father also completed mental health assessments and each was referred for a psychological evaluation.

4

During this same time frame, Susana and Elena were manifesting aggressive and assaultive behavior but Susana refused to participate in therapy. Elena was diagnosed with adjustment disorder and eventually placed on medication.

In September 2013, at the 12-month review hearing, the juvenile court continued reunification services to the 18-month review hearing, which the court set for February 2014.

Leticia Chavez conducted mother's psychological evaluation. During the evaluation, mother disclosed that she experienced auditory hallucinations during her pregnancy with Miguel and continued to do so. She said the voices did not command her to hurt others but questioned her behavior frequently and interfered with her ability to complete tasks. Chavez provisionally diagnosed mother with unspecified psychotic disorder and recommended she consult a psychiatrist to determine if she needed psychotropic medication and participate in weekly individual therapy.

Tamika London conducted father's psychological evaluation. She reported that father had many strengths in spite of the many challenges he faced, including poverty, limited support system, limited education and limited comprehension of the system and he had made reunification a priority. However, he denied being physically aggressive with mother and denied or minimized the adverse effects his actions had on his children. Dr. London opined these factors presented a substantial risk to the children and was concerned that father's neglectful behavior would recur once service providers were removed from the family situation and interventions terminated. She recommended father continue to participate in services provided by the department and couples counseling with mother geared toward maintaining safety in the home.

By February 2014, father and mother had completed a majority of their services. Mother was scheduled for a medication evaluation and individual therapy. Father was working full time and they were living in a three-bedroom home with then three-month-

old Jose and having liberal visits with Miguel, Elena, and N.H. G.H. and Jorge also lived in the family home and helped father and mother care for the children. Susana was incarcerated at the juvenile justice center. She had been found guilty of assaulting a female student at school and auto theft. In January 2014, the juvenile court terminated its dependency jurisdiction over her after she was adjudicated a section 602 ward.

In February 2014, at the 18-month review hearing, the juvenile court found mother and father made significant progress in their court-ordered services and ordered Miguel, Elena and N.H. returned to their custody under family maintenance and set a review hearing for August 2014.

In an interim report filed in June 2014, the department reported that father and mother had made significant progress in resolving the problems that led to the removal of their children. Father had completed the 52-week batterer's treatment program and did very well. He and mother were communicating more effectively with each other. Mother had been prescribed psychotropic medication which she was taking. The department was trying to locate a Spanish-speaking therapist so mother could begin individual therapy and she and father could begin couples counseling. The department recommended the court continue their services to make sure they followed up with a few final appointments and then dismiss the case at the 24-month status review hearing in August 2014.

In July 2014, an emergency response social worker went to mother and father's home after receiving information that Elena was exhibiting sexualized behavior and bleeding vaginally. It turned out that Elena had a rash and the social worker closed the referral. However, the social worker noted that the home was substandard with respect to its cleanliness and father, mother and G.H. argued intensely in her presence. Father was upset because G.H. and Jorge consumed a lot of food but did not help or contribute financially to the family. The social worker conferred with the family specialist and

parent partner who were providing assistance to the family. They agreed that the department should continue to monitor the family's progress given continued reports of verbal altercations and corporal punishment. The social worker counseled father and mother that the children were being adversely affected by their continual arguing and use of corporal punishment and the poor example set by G.H. and Jorge. The social worker told them the department had located a Spanish-speaking therapist, Jorge Romero, for mother and that he could assist them with family therapy as well. Father said he believed the family could benefit from therapy. Mother said she did not think she needed therapy and would discuss it with her attorney.

In its report for the family maintenance review hearing, the department recommended the juvenile court continue family maintenance services. The department reported that father and mother continued to make moderate to significant progress and had completed most of their court-ordered services satisfactorily and had worked "extremely hard" to reunify with their children. However, they continued to engage in aggressive arguments and the children were modeling their behavior. The department recommended the family participate in therapy with Jorge Romero. The department did not propose a modification to the case plan to incorporate family therapy, but stated the social worker assigned to their case would meet with them to update their case plan and submit it to the court separately. There is no evidence in the record that an updated plan requiring family therapy was ever presented to father and mother and/or the juvenile court.

In August 2014, at the family maintenance review hearing, the juvenile court continued family maintenance services and set a review hearing in November 2014.

In September 2014, the department received a report that mother and father's home was very dirty with a horrible odor of feces. The house had old food, clothing and papers all over the floor. The family had been given a 10-day eviction notice and father

7

had been fighting and yelling at the children. He reportedly hit Jorge and Miguel with a wooden board and hit mother with a water hose. The police were dispatched to the home and arrested Susana who had a warrant out for her arrest. Mother and father denied that father hit the children.

The department took 11-year-old Miguel, 7-year-old Elena, 4-year-old N.H. and 22-month-old Jose into protective custody. The department filed a supplemental petition (§ 387) on behalf of the three oldest children, alleging family maintenance services had been ineffective in protecting them, citing the unsanitary condition of the home, father's striking Miguel and Jorge with a wooden board and mother with a hose, and mother's striking Susana in the nose causing bleeding. The department also filed an original dependency petition on behalf of Jose alleging that father's physical abuse of Jose's siblings, and mother's inaction, and father and mother's neglect of Jose's siblings placed Jose at a substantial risk of serious physical harm and neglect. (§ 300, subds. (a), (b) & (j).) The department placed the children in separate foster homes.

The juvenile court ordered the children detained. In its report for the hearing, the department informed the juvenile court that mother had been "connected" to therapist Jorge Romero. The department did not indicate however whether she had begun therapeutic sessions with him. The department also reported that she participated in medication evaluation appointments but could not afford to buy her medication.

In October 2014, the department reported that father and mother had regressed in their ability to apply the concepts they learned in their domestic violence classes. In addition, they had not taken "full" advantage of therapeutic services which the social worker "stressed multiple times … would be a key component in their ability to deal with their deep rooted family issues." The social worker provided father and mother Jorge Romero's name and telephone number and told them it was their responsibility to schedule an appointment. She also told them Romero could provide them co-joint and

8

family therapy as well. In this report, the department stated that mother had been taking her medication on a consistent basis.

The department recommended the juvenile court sustain the section 300 and 387 petitions, terminate father and mother's family maintenance services as to Miguel, Elena and N.H., and deny them reunification services as to Jose under section 361.5, subdivision (b)(10). Section 361.5, subdivision (b)(10) allows the juvenile court to deny a parent reunification services if the court terminated reunification services for a sibling of the child and the court finds the parent failed to make reasonable efforts to treat the problem that led to the removal of the sibling. The department reasoned that mother and father had not demonstrated reasonable efforts because despite intensive and ongoing services they were unable to maintain a suitable home for the children. The department also advised the juvenile court that the children's care providers were willing to assume legal guardianship.

In February 2015, the juvenile court conducted a contested hearing on the section 300 and 387 petitions. In an addendum report filed for the hearing, the department stated it tried to re-engage father and mother in mental health services but they were not participating in them.

At the conclusion of the hearing, the juvenile court amended the section 387 petition by striking the allegation father hit mother and the children and sustained it as amended. The court sustained the allegations in the section 300 petition as set forth. The court found that Miguel, Elena and N.H. could not be safely returned to father and mother under family maintenance services and that father and mother made minimal progress in alleviating and mitigating the cause of Miguel, Elena and N.H.'s removal. Consequently, the court terminated family maintenance services as to Miguel, Elena and N.H. As to Jose, the court found father and mother failed to make a reasonable effort to treat the

9

problems that required his siblings' removal, denied them reunification services under section 361.5, subdivision (b)(10), and set a section 366.26 hearing as to all four children.

This petition ensued.

## DISCUSSION

Petitioners contend there was insufficient evidence to support the juvenile court's finding they failed to make a reasonable effort to treat the problems that led to the removal of Jose's siblings. We disagree.

"As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.] Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain circumstances. [Citation.] Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]" (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 478.) We review an order denying reunification services for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.)

In this case, the juvenile court denied petitioners reunification services under section 361.5, subdivision (b)(10) which provides:

> "(b) Reunification services need not be provided to a parent … described in this subdivision when the court finds, by clear and convincing evidence …: [¶] … [¶] (10) [t]hat the court ordered termination of reunification services for any siblings … of the child because the parent … failed to reunify with the sibling … after the sibling … had been removed from that parent … and that parent … has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling … of that child from that parent …."

10

Thus, section 361.5, subdivision (b)(10) contemplates a two-prong inquiry: (1) whether the parent previously failed to reunify with the dependent child's sibling; and (2) whether the parent "subsequently made a reasonable effort to treat the problems that led to removal of the sibling .…" (§ 361.5, subd. (b)(10); see *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 (*Cheryl P.*).) Only the second prong is disputed here.

"The 'reasonable effort to treat' standard 'is not synonymous with "cure."'" [Citation.] The statute provides a 'parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' [Citation.]" (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.)

The question arises, however, whether the effort "subsequently made" refers to the effort made subsequent to the *removal* of the sibling or subsequent to the *termination of services* as to the sibling. This is particularly relevant when, as occurred in this case, the juvenile court terminates reunification services as to a sibling and on that basis denies a parent reunification services under the statute as to another sibling at the same hearing. There is a split of authority on this issue arising out of the holdings of *In re Harmony B.* (2005) 125 Cal.App.4th 831 (*Harmony B.*) and *Cheryl P.*, *supra*, 139 Cal.App.4th 87.

In *Harmony B.,* the juvenile court, at a combined hearing, terminated reunification services as to a father and mother's (appellants) two older children after finding appellants failed to complete their services plan and their progress was unsatisfactory. The court denied appellants reunification services as to their youngest child pursuant to section 361.5, subdivision (b)(10) based on the termination of services order. (*Harmony B.*, *supra*, 125 Cal.App.4th at pp. 836, 839.) On appeal, the father challenged the denial order, arguing that in order to find that the parent failed to make a reasonable effort under the statute, there had to be a gap in time between its orders terminating and denying

11

reunification services. (*Id*. at p. 840.) The Fourth District Court of Appeal, Division Two, affirmed the juvenile court's denial order, concluding that there did not have to be a gap in time between the two orders. (*Id*. at pp. 842-843.) If there was a gap, the court concluded, the juvenile court should consider any efforts the parent made in that interim period to correct his or her problems. If both orders were made in immediate proximity, however, the court concluded that the "no-reasonable effort" clause was "a formality because the parent's circumstances necessarily will not have changed." (*Id.* at p. 843.)

The following year, the Fourth District Court of Appeal, Division One published a factually similar case, *Cheryl P*., *supra*, 139 Cal.App.4th 87, endorsing the alternative interpretation of the modifier "subsequently." As in *Harmony B.,* the juvenile court in *Cheryl P*. terminated reunification services as to one child and denied services as to the other pursuant to section 361.5, subdivision (b)(10), at a combined hearing. The court also set a section 366.26 hearing. (*Cheryl P*., *supra*, at pp. 90-95.) In denying the parents reunification services, the juvenile court did not expressly find the parents failed to make a reasonable effort to treat the problems. Instead, the court based the denial of services on the parents' failure to reunify and its view that more services would not make any difference. (*Id*. at p. 97.) The parents sought extraordinary writ relief from the court's denial of services order. (*Id*. at p. 90.) The *Cheryl P*. court granted the petition, concluding the evidence did not support a finding the parents failed to make a reasonable effort to treat the problems that led to the removal of their son. In so doing, the court interpreted "subsequently" to refer to efforts made after the sibling's removal. (*Id*. at p. 98.)

Petitioners contend the instant juvenile court's finding they did not make a reasonable effort is error whether this court applies the holding of *Harmony B*. or *Cheryl P*. Under *Harmony B*., they argue, there was *no* evidence to assess the reasonableness of

12

their efforts. Under *Cheryl P.*, they argue, the evidence was *insufficient* to support the court's finding.

We are persuaded that *Cheryl P.* holds the better view. Where, as here, parents have actively participated in and completed court-ordered services and virtually reunified with their children, albeit under family maintenance, the juvenile court's assessment of their efforts within minutes of terminating their services cannot be a mere formality. Rather, only by evaluating the parents' efforts over a meaningful period of time can the juvenile court make the important decision to facilitate reunification with another child or deny reunification services. Further, a parent's reunification services can be terminated for reasons other than the quality of their efforts.[5] Thus, we will follow the holding in *Cheryl P.* and review petitioners' efforts subsequent to the removal of Miguel, Elena and N.H. in December 2012.

In the year following the children's removal in December 2012, petitioners successfully completed all of their court-ordered services except mental health services. In light of their participation and progress, the juvenile court returned the children to their custody under family maintenance in February 2014. By June 2014, mother had completed a medication evaluation. Thereafter, she attended her medication evaluation appointments and took her medication when she could afford it. By July 2014, the social worker had identified Jorge Romero as a therapist for mother and suggested petitioners arrange family counseling with him as well. Petitioners, however, made no effort to

---

[5] For example, the juvenile court can terminate a parent's reunification services if the parent has received the maximum allowable months of services and the parent cannot show a substantial probability that the child will be returned to his or her custody after an additional period of services. In order to show a substantial probability of return, the parent must show he or she made substantial progress in resolving the problems that led to the child's removal from the home and demonstrated the capacity and ability to complete the objectives of the case plan and provide for the child's safety, protection, physical and emotional well-being and special needs. (See § 366.21, subd. (g)(1).)

initiate therapy with Romero and had still not done so by the contested hearing in February 2015.

In finding that petitioners failed to make a reasonable effort to treat the problems necessitating the children's removal, the juvenile court acknowledged the efforts they made in so many areas of their services plan, but stated it could not find they made a reasonable effort in light of their complete failure to pursue therapy which the court considered to be a critical component of their treatment plan. We concur. Though it is unclear how significant therapy was in resolving petitioners' problems, it is clear that mother had a serious mental illness and that father reacted violently to the stressors of the family. It is conceivable that individual and family therapy may have helped them assume a stronger parental role and more effectively cope under stress.

Moreover, while the degree of progress is not the focus of the "reasonable effort" inquiry, "a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914, italics in original.) In this case, after nearly two years of extensive services, petitioners' situation was not much improved over the situation that necessitated the removal of Jose's siblings.

Viewing this family's history in its totality, we conclude substantial evidence supports the juvenile court's finding petitioners failed to make a reasonable effort under the statute. Thus, we deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.

14