Filed 12/15/14  V.H. v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| V.H., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br> Respondent; <br><br>———————————————<br><br> SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., <br><br> Real Parties in Interest. | D066711 <br><br> (San Diego County <br> Super. Ct. No. J519039) |

PROCEEDINGS for extraordinary relief after reference to a Welfare and Institutions Code section 366.26 hearing.  Kimberlee A. Lagotta, Judge.  Petition denied; request for stay denied.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner.

No appearance for Respondent.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

V.H. seeks writ review of an order denying her reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(10) and (11),[1] in the juvenile dependency case of her minor daughter, Sandra H. V.H. contends the juvenile court erred by not making an express finding that V.H. did not undertake reasonable efforts to address the issues that led to the removal of V.H.'s children in two prior dependency cases. V.H. also contends the evidence did not support such a finding. We conclude the evidence supports the denial of reunification services. We therefore deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2014, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivisions (b) and (g), on behalf of newborn Sandra. The Agency alleged that V.H. suffered from schizophrenia and was under a conservatorship due to grave disability. The Agency further alleged that V.H.'s mental illness and consequent hospitalization rendered her unable to care for Sandra. The Agency maintained that Sandra had suffered or was at substantial risk of suffering serious physical harm or illness as a result of V.H.'s mental illness (§ 300, subd. (b)) and that V.H. was unable to support Sandra or arrange for her care (*id.*, subd. (g)).

---

[1] All further statutory references are to the Welfare and Institutions Code.

V.H. was legally married to Christian H., but V.H. had not been in contact with him for approximately 10 years. V.H. did not know the identity or whereabouts of Sandra's biological father.

At Sandra's detention hearing, the court found that the Agency had made a prima facie showing under section 300, subdivisions (b) and (g), and ordered that Sandra be detained in out-of-home care. At the time, Sandra remained hospitalized for withdrawal symptoms caused by psychotropic medications V.H. had taken while she was pregnant. Sandra was released from the hospital and placed in a concurrent home approximately three weeks after her birth.

In advance of the jurisdiction and disposition hearing, the Agency recommended that the allegations of the petition be sustained, that Sandra be removed from V.H.'s custody, and that no reunification services be provided to V.H. under section 361.5, subdivision (b)(10) and (11). The Agency contended that V.H. had failed to complete reunification services in one prior dependency case and that V.H.'s parental rights had been terminated in two prior dependency cases. The Agency noted that section 361.5, subdivision (b)(10) and (11), also required that the court find that V.H. had not subsequently made reasonable efforts to treat the problems that led to the removal of the children in the prior dependency cases.

The previous juvenile dependency cases involved V.H.'s sons, Isaiah H. and C.H.[2] Isaiah was removed at birth based on his positive test for illegal substances, V.H.'s

_____

[2] V.H. had previously given up her oldest child, Jaiden, voluntarily for adoption.

3

history of substance abuse (including while pregnant with Isaiah), and V.H.'s untreated mental illness (including schizophrenia and bipolar disorder). V.H. was offered reunification services, but she made minimal progress. Her parental rights over Isaiah were subsequently terminated. C.H. was removed at birth as well. The grounds for C.H.'s removal included V.H.'s use of illegal substances while pregnant with C.H. and her untreated mental illness. At the time, V.H. was subject to a temporary conservatorship. The court denied reunification services in C.H.'s case under section 361.5, subdivision (b)(10) and (11), based on V.H.'s failure to complete reunification services in Isaiah's case and the subsequent termination of her parental rights over Isaiah. The court later terminated V.H.'s parental rights over C.H. as well.

Since that time, V.H. continued to struggle with substance abuse and mental illness. She was arrested for disorderly conduct (being under the influence), vehicle theft, and possession of a stolen vehicle.[3] Later, beginning in May 2011, she spent five months in inpatient treatment at two hospitals in Orange County, California. After her release, she traveled to San Diego. She received outpatient services and was admitted overnight to a crisis center. A short time later, V.H. was found wandering the streets disoriented and confused. She was admitted to a hospital and placed on a psychiatric hold under section 5150 for grave disability. She also tested positive for marijuana and amphetamines. V.H. was subsequently placed under another temporary conservatorship

---

[3] The charge of possession of a stolen vehicle was later dismissed. No dispositions for the other charges appear in the record. In a report, an investigator for the Public Conservator stated that V.H. had a history of wandering into other people's houses and cars.

for two weeks. That conservatorship was terminated when V.H.'s mother agreed to care for her. V.H. lived intermittently with her mother until she would no longer care for V.H.

Two years later, in August 2013, V.H. was admitted to a psychiatric hospital for four and then 16 days of treatment. After her release, police found her wandering in traffic. She was again admitted and placed on a psychiatric hold under section 5150 for grave disability. She was placed under another temporary conservatorship. After that conservatorship ended, V.H. was hospitalized four more times for mental health issues. She was also arrested twice for being under the influence of a controlled substance. No dispositions for these charges appear in the record.

In April 2014, while six months pregnant with Sandra, V.H. was admitted to the psychiatric unit of Sharp Grossmont Hospital on a 72-hour psychiatric hold and then a 14-day hold. Since the beginning of her pregnancy, V.H. had stopped taking her medication. She became increasingly psychotic and exhibited symptoms such as paranoia, disorganization, and auditory hallucinations. She had no prenatal care. V.H. reported that she had been residing in a sober living facility, and she tested negative for illegal substances upon admission. However, V.H. reported she used marijuana daily and methamphetamines monthly.

At the time of her admission, V.H. was unable to care for herself or maintain basic hygiene. She began to refuse medication, and the hospital obtained permission to medicate her involuntarily. She was confined to a locked ward. In statements to an investigator for the Public Conservator, V.H. said she would be unwilling to hospitalize herself voluntarily and would not take medication if she were discharged. She was

5

placed under another temporary conservatorship, which later became permanent. Under the terms of V.H.'s conservatorship, she was unable to possess a driver's license, enter into contracts, refuse or consent to medical treatment, or possess a firearm. The least restrictive placement option was determined to be a locked treatment facility.

V.H. remained hospitalized in the psychiatric unit through Sandra's birth. Her condition began to improve, though she remained impaired. She took her medicines voluntarily. Two weeks after Sandra's birth, V.H. was transferred to an inpatient behavioral health center. Her treatment plan included support for basic skills, including taking medication, dressing appropriately for the weather, applying sunscreen when necessary, monitoring bodily functions, and exercising regularly. In conversations with social workers and others, V.H. stated that she wanted to place Sandra up for adoption. V.H. remained under conservatorship.

V.H. set a trial on jurisdiction and disposition in Sandra's case. At the contested hearing, the juvenile court received Agency reports describing, among other things, V.H.'s criminal and psychological history. The court took judicial notice of the juvenile dependency case records of V.H.'s two older children, Isaiah and C.H. No other evidence was offered or received. In brief closing arguments, the Agency asked the court to make a true finding on the petition and deny services to V.H. under section 361.5, subdivision (b)(10) and (11). V.H.'s counsel requested that the court not make a true finding. V.H.'s counsel further argued, "If the court does take jurisdiction, we would be requesting that the court offer the mother reunification services." Neither counsel specifically mentioned the reasonable efforts finding required by the statute.

6

The juvenile court sustained the allegations of the petition, removed Sandra from V.H.'s custody, and ordered her placed in foster care. The court adopted the Agency's recommendations and denied services to V.H. under section 361.5, subdivision (b)(10) and (11). The court stated, "Based upon the mother's previous termination of reunification services and previous termination of parental rights with respect to siblings Isaiah and [C.H.], I do find in this case that by clear and convincing evidence, reunification services in this case are denied under section[] 361.5[, subdivision] (b)(10) and (b)(11)." The court scheduled a selection and implementation hearing under section 366.26.

V.H. petitioned for review of the juvenile court's orders. (Cal. Rules of Court, rule 8.452; § 366.26, subd. (*l*).) This court issued an order to show cause, and these proceedings followed.

DISCUSSION

"There is a presumption in dependency cases that parents will receive reunification services. [Citation.] Section 361.5, subdivision (a) directs the juvenile court to order services *whenever* a child is removed from the custody of his or her parent *unless* the case is within the enumerated exceptions in section 361.5, subdivision (b)." (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95.)

The relevant exceptions here are contained in subdivision (b)(10) and (11) of section 361.5. Subdivision (b)(10) provides for an exception where "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or

7

half sibling had been removed from that parent or guardian pursuant to Section 361 . . . and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."  Subdivision (b)(11) similarly provides for an exception where "the parental rights of a parent over any sibling or half sibling of the child had been permanently severed . . . and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

"To apply section 361.5, subdivision (b)(10), therefore, the juvenile court must find both that (1) the parent previously failed to reunify with a sibling [or half sibling] and (2) the parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling [or half sibling]."  (*In re Albert T.* (2006) 144 Cal.App.4th 207, 217 (*Albert T.*).)  Similarly, to apply section 361.5, subdivision (b)(11), the juvenile court must make an analogous finding that (1) the parent's parental rights over a sibling or half sibling had been permanently severed and (2) the parent has not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half sibling.  (See *Albert T.*, at p. 217.)

"The 'reasonable effort to treat' standard 'is not synonymous with "cure." ' [Citation.]  The statute provides a 'parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' "  (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.)  However,

8

"[w]e do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).) The Agency bears the burden of proof to show that a parent has not made the reasonable effort required by the statute. (*Cheryl P. v. Superior Court, supra*, 139 Cal.App.4th at p. 98; *Albert T., supra*, 144 Cal.App.4th at p. 221.)

"An order denying reunification services is reviewed for substantial evidence." (*R.T., supra*, 202 Cal.App.4th at p. 914.) "When the sufficiency of the evidence to support a juvenile court's finding or order is challenged on appeal, the reviewing court must determine if there is substantial evidence, contradicted or uncontradicted, that supports it. [Citations.] Under this standard of review we examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses. [Citation.] We must resolve all conflicts in support of the determination and indulge all legitimate inferences to uphold the court's order." (*Albert T., supra*, 144 Cal.App.4th at p. 216.) "However, substantial evidence is not synonymous with any evidence." (*Ibid*.) " ' "The ultimate test

9

is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." ' " (*Id.* at p. 217; see *In re Harmony B.* (2005) 125 Cal.App.4th 831, 839-840.)

V.H. does not contest the juvenile court's findings that she failed to reunify with Isaiah or that her parental rights over Isaiah and C.H. were terminated by the court. Instead, she contends the court erred by not making an express finding regarding V.H.'s lack of reasonable efforts. She also contends the evidence would not support such a finding. We address each contention in turn.

Without explicitly considering the issue, this court has held that an implied finding that a parent has not made a reasonable effort under section 361.5, subdivision (b)(10) and (11) was supported by substantial evidence. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 107-108.) In *Albert T.*, by contrast, the court expressed "considerable doubt as to the propriety of implying findings from an otherwise silent record to justify the denial of [reunification] services . . . ." (*Albert T., supra*, 144 Cal.App.4th at p. 219.) That court did not explicitly decide that implied findings would be impermissible, however, because it determined that the evidence did not support the finding even if it were implied. (*Ibid.*)

Given the complexity of the juvenile dependency scheme and the importance of factual findings in dependency cases, juvenile courts should strive as a general practice to make express findings where, as here, factual findings are required by statute. However, we need not decide whether express findings are *required* in this case because, even if express findings were required, this court may imply such findings where the evidence is clear. (See *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1825; see also *In re Y.M.*

10

(2012) 207 Cal.App.4th 892, 918-919 [implying finding where "ample evidence supports the finding" and "[t]he result is obvious from the record"].)  We conclude it would be appropriate to do so in this case.[4]

The facts relevant to a determination of reasonable efforts here are essentially undisputed.  After V.H.'s parental rights to her sons Isaiah and C.H. were terminated, V.H. was hospitalized at least five times for severe mental illness.  To the extent the impetus for these hospitalizations is reflected in the record, they were involuntary commitments.  Temporary conservatorships were established over V.H. four times, reflecting V.H.'s inability to take care of her own basic needs—including her mental health.  By the time of Sandra's birth, a permanent conservatorship had been imposed. The record also reflects V.H.'s refusal to contribute to her own mental well-being through her refusal to take medication or voluntarily commit herself.  Given these facts, it is clear that V.H. has not made a reasonable effort to address the mental health issues that lead to the removal of Sandra's half siblings.  (See *R.T., supra*, 202 Cal.App.4th at p. 914.)

Similarly, it is clear that V.H. has not made a reasonable effort to address her substance abuse issues.  Since V.H.'s parental rights over Isaiah and C.H. were terminated, V.H. was arrested three times on drug-related charges.  When she was admitted to a psychiatric hospital in 2011, she tested positive for marijuana and

---

4      Although reasonable efforts were not discussed at the contested jurisdiction and disposition hearing, we note that the requirement was not completely ignored.  The Agency's report and recommendations describing the application of section 361.5, subdivision (b)(10) and (11), identified the required finding that a parent not have made a reasonable effort to treat the problem that led to the removal of the sibling or half sibling.

11

amphetamines. Although she resided in a sober living arrangement prior to her most recent hospitalization, she admitted using marijuana every day and methamphetamines monthly. Given V.H.'s continuing issues with substance abuse, which appeared to resolve only though involuntary commitment, ample evidence supports the implied finding that V.H. had not made a reasonable effort to address that problem as well. (See *R.T., supra*, 202 Cal.App.4th at p. 915 ["Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered as a factor in the juvenile court's determination of whether an effort qualifies as reasonable."].)

Unlike *Albert T.*, where the court believed the problems that led to the prior removal had been misinterpreted, the problems identified in Isaiah's and C.H.'s petitions are not subject to dispute. (See *Albert T., supra*, 144 Cal.App.4th at pp. 219-220.) Moreover, whereas the parent in *Albert T.* had completed several programs to address the purported problem, including individual counseling and parenting classes, V.H. does not appear to have made any similar efforts to voluntarily address her mental health and substance abuse issues. (See *id.* at pp. 220-221.)

We therefore disagree with V.H.'s contention that the evidence did not support the court's implied finding under section 361.5, subdivision (b)(10) and (11) that V.H. did not make a reasonable effort to treat the problems that led to Isaiah and C.H.'s removal. V.H.'s argument that the evidence shows only that V.H.'s mental health and substance abuse issues had not been "cured" is unpersuasive. (See *K.C. v. Superior Court, supra*, 182 Cal.App.4th at p. 1393.) The number and extent of V.H.'s involuntary commitments,

and V.H.'s conduct leading to those commitments, show that the effort V.H. made to treat her mental illness, if any, was not reasonable. (See *R.T., supra*, 202 Cal.App.4th at p. 915.) Similarly, V.H. had multiple drug-related arrests and, despite a sober living arrangement, V.H. continued to use marijuana daily and methamphetamine monthly. These facts show that V.H.'s problems were so severe that more was needed in order to be a reasonable effort to treat them. (See *ibid.*; see also *In re Jasmine C.* (1999) 70 Cal.App.4th 71, 76 ["Moreover, by the evidence of her reoffending, the record establishes that appellant failed to make a reasonable effort to treat the problems that led to the removal of [the sibling] from her custody."].)

The relative dearth of evidence surrounding V.H.'s activities between 2011 and 2013 also does not compel the conclusion that a finding of no reasonable effort may not be implied here. During that time, V.H. appears to have alternately lived with her mother and been homeless. At the end of the period, however, the status of her mental health and substance abuse issues remained unchanged. Whatever her activities during that period (and there is no evidence she sought treatment for either issue), they did not constitute reasonable efforts given the events that followed. (See *R.T., supra*, 202 Cal.App.4th at p. 915; see also *In re Jasmine C., supra*, 70 Cal.App.4th at p. 76.) Moreover, given V.H.'s lack of voluntary efforts before and after the period in question, a reasonable inference to be drawn from the relative dearth of evidence is that V.H. did not undertake reasonable efforts during that period as well. (See *Albert T., supra*, 144 Cal.App.4th at p. 217.)

13

V.H.'s contention that this case might better have been assessed under section 361.5, subdivision (b)(2), which allows denial of services where "the parent or guardian is suffering from a mental disability . . . that renders him or her incapable of utilizing those services," appears to have substantial merit. Regardless of the potential applicability of that subdivision, however, substantial evidence supports the court's order denying services under section 361.5, subdivision (b)(10) and (11) as well.

DISPOSITION

The petition and request for stay are denied.

HALLER, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.