Filed 2/5/15  Nicole B. v. Super. Ct. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOUTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NICOLE B., | D066874 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. J519002) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

PROCEEDINGS for extraordinary relief after reference to a Welfare and Institutions Code section 366.26 hearing.  Kenneth J. Medel, Judge.  Petition denied; request for stay denied.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Dependency Legal Group of San Diego, Tilisha Martin, Carolyn Levenberg and Alexandra Abbey for Minor.

Nicole B. seeks writ review and stay of a juvenile court order denying reunification services as to her minor son, Michael B., and setting a Welfare and Institutions Code[1] section 366.26 hearing. Nicole contends the evidence was insufficient to support the denial of services under section 361.5, subdivision (b)(10) and (11). We deny the petition and Nicole's request for a stay.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2014, the San Diego County Health and Human Services Agency (the Agency) filed a petition on behalf of newborn Michael B. under section 300, subdivisions (b)[2] and (g). The subdivision (b) count alleged that Nicole "had a mental illness, including, but not limited to, anxiety, depression and cognitive impairment for which she was hospitalized in February 2014. Further, the mother was incarcerated at Las Colinas, just prior to giving birth where she exhibited signs of paranoia, disorganization and agitation during most of the time there. The mother has demonstrated a negative association with the child during her pregnancy and after birth,

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Effective June 20, 2014, after the Agency filed the petition, subdivision (b) of section 300 was redesignated subdivision (b)(1). (Stats. 2014, ch. 29, § 64.)

2

which rendered her incapable of providing regular care for [the] child . . . ." The subdivision (g) count alleged Nicole had been incarcerated or institutionalized and could not arrange for the care of Michael. The petition alleged the identity and whereabouts of the father were unknown.

The Agency received a referral and detained Michael the day after Nicole gave birth to him during her incarceration at Las Colinas Correctional Facility. The Agency in its detention report stated that Nicole had a history of psychiatric illness and substance abuse issues and had not shown any interest in seeing Michael after he was born. She did not receive prenatal care before her incarceration on February 4, 2014, and she tested positive for methamphetamine in January 2014 while pregnant. She told treating physicians she blamed Michael for nightmares and other psychiatric issues during her pregnancy.

The Agency social worker who interviewed her the day after Michael was born reported Nicole was handcuffed to her hospital bed and was being monitored by two Sheriff's deputies because of her history of violent behavior. She was incarcerated and charged with assault with force likely to cause great bodily injury and battery on emergency personnel after she became violent with staff at a county mental health facility in February 2014.[3] A representative of the district attorney's office told the social worker

_____

[3]    The social worker reported in the Agency's detention and jurisdiction/disposition reports that Nicole was charged with three felony counts of assault with force likely to cause great bodily injury and three misdemeanor counts of battery on emergency personnel. However, Nicole's entire criminal history, which the Agency obtained from a "CLETS" (Criminal Law Enforcement Telecommunications System) request and set

3

Nicole had been found not competent to face her charges and would be sent to Patton State Hospital (Patton) to stabilize her mental condition until she became competent enough to face the charges. A person sent to Patton to stabilize before facing criminal charges usually would be there around six months, but could be there for up to three years. Nicole denied having mental health issues and repeatedly told the social worker, "I have to go to Patton and then I have to get myself together. I can't have the baby with me." She also repeatedly said, "I hate psych meds." She was unsure whether she wanted to give Michael up for adoption or work toward reunification.

When the social worker interviewed Nicole on June 11, 2014, Nicole reported she had been living in the Los Angeles area with a boyfriend she described as "abusive." She said he had "control issues" and she was tired of living on the streets and smoking "meth" with him. She told the social worker, "I'm a user, a smoker. I smoke a lot." She told an obstetrician who evaluated her in February 2014 that she had recently used meth, crack, and THC[4] with her boyfriend. When she found out she was pregnant, she wanted to stop using methamphetamine and get away from her boyfriend, so she took a bus to Tijuana, Mexico, and then decided to go to San Diego because she had no money.

---

forth in the jurisdiction/disposition report, lists one count of "Assault with deadly weapon with force: Possible great bodily injury"; one count of "Assault with force: Possible great bodily injury"; and two counts of "Battery Peace Officer/emergency personnel/etc." from the February 2014 incident.

[4] THC or tetrahydrocannabinol is "the chief intoxicant in marijuana." (Webster's 11th Collegiate Dict. (2004) p. 1294.)

In San Diego, law enforcement directed Nicole to a shelter. She started "having nightmares" at the shelter and voluntarily checked herself into a county psychiatric hospital after she "swung [her fist] on a nurse after a nightmare." She told the social worker she only took psychiatric medication if she was "really stressed out," and she only became stressed out when she had to stay sober and off drugs. When she was on parole and had to stay sober, she used psychiatric medications "to cut off [her] edge." Regarding Michael, she told the social worker, "I really don't want to get rid of him. I'm just stressed out because of the situation I'm in. I didn't want to have a baby right now. It's bad timing. I don't have family. I don't have support."

Nicole's criminal history set forth in the jurisdiction/disposition report includes numerous arrests between 1994 and 2008 for possession of a controlled substance (among other charges), including four in 2003, three in 2005, and one in 2006. She was convicted of possession of a controlled substance in 2003 and 2005, and was sentenced to 16 months in prison in 2005 after violating her probation. Nicole had no criminal history from June 2008 until April 2013, when she was arrested and convicted for possession of controlled substance paraphernalia. In October 2013 she was charged with one count of "Obstruct/etc. Public Officer/etc." and one count of "Battery Peace Officer/emergency personnel/etc." The next charges brought against her were the assault and battery charges arising from her violence against staff members of the county mental health facility in February 2014.

A. <u>Prior Dependency Case</u>

In October 2004, the Department of Children and Family Services in Los Angeles County filed a section 300 petition on behalf of Nicole's daughter Mariah J. eight days after her birth. Under section 300, subdivision (b), the petition alleged Nicole had a history of substance abuse and was a frequent user of methamphetamine and marijuana, and had used illegal drugs throughout her pregnancy. The petition further alleged she neglected the child by failing to feed her and change her diaper in the hospital. The juvenile court sustained the petition, removed Mariah from her custody, and ordered reunification services for Nicole. In May 2005, the court terminated Nicole's services because she was not in compliance with her case plan. The court terminated her parental rights to Mariah in December 2006.

B. <u>Jurisdiction and Disposition Hearings in the Present Case</u>

At the initial jurisdiction hearing, the court appointed a guardian ad litem for Nicole and set a contested jurisdiction and disposition hearing for August 8, 2014. At the August 8 hearing, the court sustained the petition and made true findings on the section 300, subdivisions (b) and (g) counts. Over Nicole's objection, the court granted the Agency's request to bifurcate jurisdiction and disposition and set a contested disposition hearing for October 22, 2014. In September, Nicole's counselor at Patton left the social worker a voicemail in which he stated, "It doesn't look like she'll be released anytime soon."

At the contested disposition hearing, the court admitted the Agency's reports into evidence and took judicial notice of documents from Mariah's dependency case attached

to the Agency's motion for judicial notice. The court declared Michael a dependent of the court, removed him from Nicole's custody, and placed him in foster care. The court set a section 366.26 hearing and, under section 361.5, subdivision (b)(10) and (11), denied Nicole reunification services on the ground she had not made a reasonable effort to treat the problems that led to Mariah's removal from her custody in the prior dependency case.

DISCUSSION

Nicole contends the court erred in denying her reunification services. "On removal of a child from parental custody, the juvenile court generally must order reunification services to assist the parent to rectify the problems that led to removal. [Citations.] 'This requirement implements the law's strong preference for maintaining the family relationship if at all possible.' " (*In re Lana S.* (2012) 207 Cal.App.4th 94, 106.) However, section 361.5 authorizes the juvenile court to deny a parent reunification services if it finds, by clear and convincing evidence, either that the court terminated reunification services for a sibling or half sibling because the parent failed to reunify with the sibling or half sibling after the child's removal (§ 361.5, subd. (b)(10)), or that the parent's rights over a sibling or half sibling were terminated (§ 361.5, subd. (b)(11)), and in either circumstance, the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ." (§ 361.5, subd. (b)(10) & (11).) The Agency bears the burden of proving the parent has not made the reasonable effort required by the statute. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 98; *In re Albert T.* (2006) 144 Cal.App.4th 207, 221.)

7

In evaluating whether a parent has made a reasonable effort to treat the problems that led to removal of the sibling or half sibling, the court focuses on the extent of the parent's efforts, not whether he or she has attained "a certain level of progress." (*Cheryl P. v. Superior Court*, *supra*, 139 Cal.App.4th 87, 99.) "The 'reasonable effort to treat' standard 'is not synonymous with "cure." ' [Citation.] The statute provides a 'parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.)

However, the term "reasonable effort" in section 361.5, subdivision (b)(10) and (11) does not "mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort . . . ." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.) The court may "consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made." (*Ibid.*) Thus, "although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable." (*Id*. at p. 915.)

We review an order denying reunification services for substantial evidence. (*R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 914.) We do not consider the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is substantial evidence supporting a contrary finding. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610; *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346.)

Substantial evidence supports the order denying Nicole reunification services. It is undisputed that Nicole did not reunify with Michael's half sibling Mariah and her parental rights over Mariah were terminated. Thus, the first element of section 361.5, subdivision (b)(10) and (11) is satisfied. Nicole argues the Agency did not meet its burden of proving she did not make a reasonable effort to treat the problems that led to Mariah's removal because the Agency did not account for four years and nine months of the approximately nine-year period since the court terminated her parental rights in Mariah's dependency case.

We conclude substantial evidence supports the court's finding that Nicole had not made a *reasonable* effort to treat her substance abuse problem that led to Mariah's removal in the prior dependency case, notwithstanding the time period for which the Agency did not account for Nicole's conduct. Mariah's removal was largely based on Nicole's history of substance abuse and her frequent use of methamphetamine and marijuana, including throughout her pregnancy. In the present case, Nicole admitted to

9

the social worker that she was "a user, a smoker[,]" and told the obstetrician who evaluated her in February 2014 that she recently had used methamphetamine and crack cocaine. In June 2014, shortly after Michael's birth, she admitted to using methamphetamine on a regular basis, including during her pregnancy with Michael. Nicole's criminal history revealed a substance abuse problem going back to at least 2003. She had multiple arrests for possession of a controlled substance between 2003 and 2005, and convictions in 2003 and 2005. In 2013 she was convicted of possession of controlled substance paraphernalia.

In its oral ruling denying Nicole reunification services, the court focused on Nicole's statements to the social worker that she took psychiatric medication only if she was "really stressed out"; she only became stressed out when she had to stay sober and off drugs; and she used psychiatric medications "to cut off [her] edge" when she was on parole and had to stay sober.[5] From these statements, Nicole's criminal history of drug-related offenses, and the absence of any evidence that she ever made an effort to overcome her drug abuse problem apart from staying sober only when she "had to" as a

_____

[5] The court interpreted Nicole's statements as saying, " 'I'm a meth user. That's what I do, and that's what I'm going to be doing and that's kind of the way it is. And I've been using with my friend. We use together. In fact, what really irks me is when I use the psychotropic drugs, those make me crazy, but not when I use methamphetamine . . . . That's my day-to-day sort of thing. I have to use the psychotropic drugs to not be crazy. I mean, when I use the psychotropic drugs, I'm great. I really go off the edge, but not so when I use the methamphetamine and other drugs. Those are part of my daily existence.' " The court concluded "all of that information together paints that picture of someone who has not reasonably dealt with those problems, which resulted in . . . the removal of [Mariah] initially and then the termination of her services and then the termination of her parental rights."

condition of parole, the court could reasonably infer that since her pregnancy with Mariah, Nicole continuously had been committed to using illegal drugs as a way of life and had never been seriously interested in treating her mental health problems or overcoming her drug addiction.[6] The court was not required to find Nicole made a reasonable effort to treat her drug abuse problem during the unaccounted for time period based solely on the *absence* of evidence one way or the other as to whether she did.

As noted, although the degree of a parent's success in treating the problems that led to removal of a sibling or half sibling in a prior dependency case is not the focus or sole measure of whether the parent has made a reasonable effort to treat those problems, the measure of success achieved is a factor the court may consider in determining whether the parent has met the "reasonable effort" requirement under section 361.5, subdivision (b)(10) and (11).  (*R.T. v. Superior Court, supra,* 202 Cal.App.4th at pp. 914-915.)  In making that determination, the court properly may consider a parent's "lack of progress, both in the short and long term . . . ."  (*Id.* at p. 214.)  The court properly considered Nicole's lack of long-term progress in treating her substance abuse problems and reasonably found, based on that lack of progress, Nicole had not made a reasonable effort to treat her drug abuse problems.

---

6    The court concluded:  "Here, . . . we have such a long history of chronicity, such a commitment and identification with the drug, that I don't think . . . it is appropriate to offer services in this case . . . ."

11

## DISPOSITION

The petition is denied.  The request for stay is denied.

McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.