Filed 7/13/15  N.G. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| N.G.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>MENDOCINO COUNTY,<br><br>        Respondent;<br><br>MENDOCINO COUNTY HEALTH &<br>HUMAN SERVICES AGENCY et al.,<br><br>        Real Parties in Interest. | A144096<br><br>(Mendocino County Super. Ct.<br> No. SCUK-JVSQ-13-16744) |

Petitioner N.G., G.G.'s mother, petitions this court to set aside the juvenile court's January 16, 2015 order denying her reunification services, and setting a May 12, 2015 hearing, pursuant to Welfare and Institutions Code section 366.26.[1]  On March 16, 2015 we issued an order to show cause and stayed the May 12, 2015 hearing.  For the reasons given below, we deny the petition and dissolve the stay.[2]

---

[1]     Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

[2]     Petitioner also filed an appeal challenging the January 16, 2015 order (see *Mendocino County Department of Social Services v. N.G.,* A143908, which has yet to be decided), but filed this writ petition to "preserve" the issue on appeal.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2013 the minor, G.G., was detained by Mendocino County Health & Human Services Agency [the Agency]. G.G. was approximately one year old at the time he was detained. Several days before G.G. was detained N.G., the minor's mother was arrested following a domestic altercation with G.G.'s father, J.-G.S. According to the Agency's April 3, 2013 detention summary, mother attempted to kick a police officer, refused to get into a patrol car and otherwise resisted arrest. The Agency's detention summary also noted that mother told the social worker that she had had "one or two beers" prior to the altercation. However, test results conducted at the time of her arrest established that mother's blood alcohol content was 0.127 percent.

Prior to this incident this family was well-known to the Agency. At the time of G.G.'s detention, the Agency had an open case involving his two older siblings. G.G.'s siblings were detained in August 2010 but were returned to the petitioner a short time later with full family maintenance services. Father was also offered reunification services. In March 2011, G.G.'s siblings were detained once more when the Agency filed a petition pursuant to section 387. Petitioner and Father were offered reunification services once more. In March 2012 parents regained custody of the children and were provided with family maintenance services. However, in April 2013, the Agency filed a petition requesting that G.G. be detained and declared a dependent of the juvenile court pursuant to sections 300, subdivisions (b) and (j) as a result of mothers arrest on March 29, 2013.

Specifically, the Agency alleged with regard to petitioner, (1) that G.G. had suffered or was at substantial risk to suffer serious physical harm or illness due to his mother's substance abuse; (2) that G.G. had two siblings who had been abused or neglected by the mother; and (3) that G.G. faced a substantial risk of abuse or neglect.[3] Following a contested jurisdictional hearing, in which both mother and father testified, the court found the allegations to be true.

---

[3]     In addition, the father's parental rights had been terminated with respect to his two other daughters in May 2012.

A dispositional hearing was held on June 13, 2013. At the conclusion of the hearing, the juvenile court found by clear and convincing evidence that grounds for bypassing services to the father were present; however, it ordered that petitioner be provided reunification services regarding G.G., but set a section 366.26 hearing regarding petitioner's parental rights with respect to G.G.'s two siblings.

Prior to the six-month hearing, the social worker filed the Agency's status report. The report noted, inter alia, that G.G. "goes to his mother easily and the mother responds to [his] needs." The Agency's report stated "it is evident that [the mother] has a loving relationship with her child and can meet his needs despite obstacles." The report cautioned that the mother should continue services "to learn boundaries and methods to protect herself and her son from exposure to violence."

The juvenile court conducted its six-month review on November 21, 2013. At the conclusion of the hearing, the court ordered that G.G. be returned to his mother's custody with family maintenance services. The juvenile court conducted its review of family maintenance on May 8, 2014, and ordered that mother continue to receive family maintenance services.

On October 22, 2014, the 12-month family maintenance review was held. The Agency's 12-month status report stated, in part: "Despite her struggle with providing safe and appropriate parenting to the child's older siblings, [N.G.] has proven herself capable of meeting the needs of [her son]. [N.G.] has remained clean and sober, maintains a full time job, and adequately cares for the child. [N.G.] has consistently attended services, including Anger Management and individual therapy. [N.G.] successfully completed a 52-week Anger Management course with Santiago Simental, and reports feeling that the course was beneficial in the she learned tools to mange her anger."

"[G.G.] continues to display a healthy bond with the mother and continues to appear well adjusted in her care. The child's needs continue to be met in the care of the mother. Despite services being terminated as to the mother with the older siblings, the mother's relationship with [G.G.] is a positive one. The social worker, however, is

3

concerned with the history of physical abuse and unhealthy parenting between the mother and older siblings, the [tremendous] domestic violence relationship between the mother and father, and most recent admission of the mother wanting to drink on her upcoming 30th birthday."

"It is respectfully requested that family maintenance services continue as to the mother to allow [N.G.] the opportunity to demonstrate her newly acquired anger management skills outside of the Alternatives to Violence while also ensuring that the mother stay[s] free from domestic violence and substance use." The juvenile court, however, noting the long duration of the mother's case, starting with her older children, commented on the different relationship N.G. had with G.G., as compared with the other children. The court noted that N.G. was meeting her son's needs, had remained clean and sober, maintained a full-time job, completed a year-long domestic violence class and received an exemplary review from the program manager. She consistently attended anger management and individual therapy and G.G. was well-adjusted in her care. The court dismissed the dependency case, terminated jurisdiction, awarded the mother full physical and legal custody of G.G., and told her, "It's up to you now. I never want to see you back in this court again." N.G. assured the court that she would not. The court also determined that the father's visitation had proven to be "detrimental," and declined to order further visitation with the father.

Unfortunately, on November 13, 2014 the Agency filed a subsequent petition on G.G.'s behalf, alleging that N.G. left him unsupervised with an inappropriate caregiver — the father, who had an extensive history of substance abuse and domestic violence, and ignored the court's October 22, 2014 order that visitation with Father would be "detrimental" to G.G.

The petition alleged that the mother was unwilling and unable to provide appropriate care for her son due to her ongoing substance abuse and other unresolved issues, which put the minor at substantial risk of harm. Specifically, it alleged that on November 7, 2014 at 6:45 a.m., G.G. was found "walking in the middle of the street without shoes, in a soiled diaper and urine soaked clothing." When N.G. spoke with the

4

Agency about this incident she was informed that she would be required to submit to drug testing. She declined, stating, "I'm at work, I don't have time for this," and hung up the phone. The Agency attempted unsuccessfully to visit her home on the weekend twice, to test mother for drugs. Three days after the incident, N.G. visited the Agency and provided a clean test. The petition also referenced N.G.'s "extensive [child protective services] history with her two older children," which resulted in termination of services after 48 months of services being offered and alleged that the prior abuse and neglect of the other children placed G.G. at risk of substantial harm in his mother's care. The petition noted that G.G. had previously been detained due to general neglect, including an incident of domestic violence between the parents, but that G.G. was later returned to N.G.'s care under a family maintenance plan, and that case was ultimately dismissed. It concludes, "[t]he mother does not appear to have corrected the issues that lead [sic] to the prior detention of [G.G.]"

At the December 9, 2014 jurisdictional hearing, the juvenile court found by a preponderance of the evidence the allegations N.G. allowed G.G. to be supervised with an inappropriate care giver — the father — and that she had an extensive child protective services history with both her two older children and G.G., to be true. The court did not find that the evidence supported the allegation that the mother's on-going substance abuse placed G.G. at risk. The court determined that despite the Agency's concern about N.G. past drug abuse, it found no evidence to support a determination that her substance abuse presented a *current* risk to the child.

A dispositional hearing was held on January 13, 2015. At that hearing the court acknowledged mother's continuing efforts to improve her parenting skills, however the court expressed concern "that despite the fact that she's continued in services, she continues to make decisions that place her child at risk despite having almost four years of services with [G.G.] in the prior case and with his older brother and sister." The court indicated that it was doubtful that the Agency could effect real change in the mother given the extended/extensive services provided to mother. The court then discussed with the parties whether it was appropriate to bypass reunification services for mother. After

5

taking the matter under submission, on January 16, 2015 the court denied N.G.'s request for reunification services pursuant to the bypass provisions of section 361.5, subdivisions (b)(10) and (b)(11).[4]  In so doing, the court  acknowledged mother's "sincere" efforts to address the problems that originally brought her to the court's attention but noted that having received "almost every service available to the Agency over a four year period in the sibling cases," N.G. "was unable to consistently implement safe parenting practices." The court cited to the number of instances G.G.'s siblings were removed from and returned to mother.  In addition, the court identified  several examples (out of "numerous occasions") of mother "stubbornly mak[ing] decisions contrary to her children's best interests."[5]  The order concludes:  "With all of the foregoing in mind, the court is not convinced that [N.G.'s] efforts to address the problems which resulted in the removal of [G.G.'s] siblings . . . , and the subsequent termination of her parental rights over [those

---

[4]      Section 361.5, subdivision (b) reads in relevant part:
"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:"  [¶] . . . [¶]

"(10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."

"(11) That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

[5]      Specifically, the court cited an incident in the spring of 2014 when N.G.'s decision to allow the father to visit her resulted in the children's witnessing a fight between the father and a third-party; in the fall of that year, after completing a substance abuse program, commenting to her social worker that she wanted to go drinking to celebrate her birthday; and the November 2014 incident, described above, when she allowed the father to care for G.G., resulting in the child wandering alone in the street in a soiled diaper.

6

siblings] were reasonable. Despite having four years to learn and practice techniques to keep her children safe, [N.G.] did not demonstrate adequate progress towards this essential goal. Based upon the totality of the facts and circumstances of this case, the court cannot find that '. . . there is a reasonable basis to conclude that the relationship with the current child could be saved' with the provision of reunification services. (*Renee J. [v. Superior Court* (2002)] 96 Cal.App.4th [1450,] 1464.)"

The court also rejected mother's argument that her positive relationship with G.G. and her past ability to parent G.G. well demonstrates that reunification would be in G.G.'s best interest. The court determined that the bond between mother and child did not outweigh the child's need "for permanency, stability, and an ongoing relationship with his siblings," citing *In re Brooke C.* (2005) 127 Cal.App.4th 377, 383 for the proposition that the parent-child relationship may not support a "best interest finding where the child has been removed multiple times. The court then set a hearing, pursuant to section 366.26 to decide on a permanent plan for the child, to be held on May 12, 2015.

On January 22, 2015 N.G. filed her notice of intent to file writ petition. On March 16, 2015 petitioner filed her writ petition in this court; we issued an order to show cause and temporarily stayed the hearing below that same day. After the Agency filed its opposition to the petition, all parties waived oral argument.

**DISCUSSION**

Petitioner raises two legal arguments in support of her request for writ relief: (1) that the juvenile court erred when it bypassed N.G. for reunification services because mother had made reasonable efforts to rectify the problems that led to the removal of G.G.'s siblings and the termination of her parental rights to them and (2) that assuming the bypass provisions were satisfied, the juvenile court erred when it determined that reunification was not in G.G.'s best interests, pursuant to section 361.5, subdivision (c).[6]

---

[6]    In pertinent part, section 361.5, subd. (c) provides: "The court shall not order reunification for a parent or guardian described in paragraph (3), (4), (6), (7), (8), (9), (10), (11),

**I.**      <u>**Standard of Review**</u>

Orders applying the bypass provisions of section 361.5, subdivision (b), are reviewed for substantial evidence. (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1088-1089, 1092, fn. 7.) Under that standard we determine whether any substantial evidence exists — regardless of whether or not there is also contradictory evidence — which supports the lower court's factual findings. (*In re Heidi T.* (1978) 87 Cal.App.3d 864, 872, citing *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.) In order to prevail, petitioner must demonstrate that there is no evidence of a sufficiently substantial nature to support the findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.) It is for the juvenile court, which had the opportunity to observe the witnesses, to make credibility determinations. (*In re Margarita D.* (1999) 72 Cal.App.4th 1288, 1295-1296.)

We review the juvenile court's determination that it would not be in G.G.'s best interests to continue reunification services for abuse of discretion. (*In re. G.L.* (2014) 222 Cal.App.4th 1153, 1164-1165.)

**II.**      **Substantial Evidence Supports The Juvenile Court's Determination That The Mother Should Be Bypassed For Services Pursuant To Section 361.5, Subdivisions (b)(10) and (b)(11).**

In general reunification services are required when a child is removed from the custody of his/her parents' custody, pursuant to section 361.5, subdivision (a). However, the legislature has adopted various exceptions to this general rule, reflecting a policy to provide services to parents only where those services will facilitate the return of children to parental custody. (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.) When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that it would be an unwise use of resources to invest in reunification services in a particular case. (*Ibid.*)

---

(12), (13), (14), (15), or (16) of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."

N.G. concedes that services and her parental rights have been terminated with respect to G.G.'s siblings. However, termination of services and parental rights with respect to G.G.'s siblings are not sufficient to justify termination of reunification services regarding G.G. Both subdivisions relied upon by the juvenile court to support its decision to bypass reunification services to N.G. also require a finding that the parent has not subsequently made reasonable efforts to treat the problem that originally necessitated the other sibling's removal.

The juvenile court acknowledged this requirement when it noted N.G.'s efforts to reunify with G.G. The January 16, 2015 order states: "The evidence established that mother had participated in family reunification and family maintenance services with her children . . . from 2010-2014." Later, it states: "Mother engaged in, and to some degree benefited from, family reunification and family maintenance services in the earlier dependency cases involving . . . . Upon receiving new referrals to services following [G.G.'s] re-detention on November 7, 2014, [N.G.] promptly re-engaged in the Intake Support group and domestic violence classes. She completed an assessment with the County's Alcohol and Other Drugs program and was found not to require treatment. The Program Administrator of the "Alternatives to Violence" program opined that mother was '. . . sincere about doing all that has been asked of her towards hopes of regaining custody of her children. She has worked hard over the course of this time and I feel that she has not been given credit for her work and efforts.' "

In assessing a parent's efforts, a court may not require that the parent be cured of the original problem. (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914, citing *K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) Rather, the court should consider various factors including the duration, extent, context of the parent's efforts and factors relating to the quality and quantity of those efforts. (*Ibid.*) "Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable." (*Id.* at p. 915.)

9

Here, the juvenile court weighed N.G.'s genuine efforts at resolving her issues against very specific evidence that she had not made sufficient progress, given the gravity of those issues. In particular, the court focused on N.G.'s decision to leave G.G. in his father's care (which resulted in his being found by passers-by wandering in the middle of the street), despite the couple's history of domestic violence, the father's long history of substance abuse, the father's failure to reunify with his four other children, the court's prior order denying the father visitation with G.G., and emotional trauma one of G.G.'s siblings had as a result of the father's unauthorized visit with her. The juvenile court then reviewed N.G.'s entrenched pattern of making poor decisions concerning her children's well-being, despite having received "almost every service available to the Agency over a four year period." The court listed three specific incidents: (1) N.G. allowing the father to come to her residence, which resulted in his getting into a fight in the children's presence in the spring of 2014; (2) N.G. telling her social worker that she wanted to go drinking to celebrate her birthday after completing a drug court substance abuse program; and (3) leaving G.G. alone with his father, resulting in G.G.'s being found wandering in the street, on November 7, 2014.

Unquestionably substantial evidence supports the juvenile court's conclusion to bypass reunification services regarding N.G. Given the extensive services provided to N.G. by the Agency to assist her in developing suitable parenting skills and good judgment, there was substantial evidence to support the court's conclusion that further services would not allow N.G. to achieve an acceptable level of success in parenting of G.G. Thus, we will not disturb the juvenile court's determination that bypassing N.G. was appropriate.

III.     **Reunification Was Not In G.G.'S Best Interests.**

The juvenile court further held that the mother had not satisfied her burden of establishing by clear and convincing evidence that reunification is in G.G.'s best

interests.[7] The court determined that G.G.'s relationship with his mother did not outweigh "his need for permanency, stability, and an ongoing relationship with his siblings." Implicitly, the juvenile court weighed G.G.'s stable placement with his siblings against a relationship with his mother in which she is unable to make judgments that reliably provide him with a secure, stable environment. The record before us clearly establishes that the juvenile court did not abuse its discretion in reaching this conclusion.

## DISPOSITION

The petition for an extraordinary writ is denied. The stay issued by this court on March 16, 2015 is dissolved. To expedite the prompt resolution of this case, our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.

---

[7]     In order to avoid the bypass provision for a parent who otherwise would fall within one of the enumerated categories, the statute requires the court to find by clear and convincing evidence that reunification is in the child's best interests. The Rules of Court clarify that the parent who is seeking reunification bears the burden to establish by clear and convincing evidence that reunification is in the child's best interest. (Cal. Rules of Court, rule 5.695(O)(11).)

11