Filed 4/12/21  In re B.F. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.F., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.P.,<br><br>    Defendant and Appellant. | E075717<br><br>(Super.Ct.No. SWJ1500275)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Donal B. Donnelly, Judge.  (Retired judge of the Imperial Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Anna M. Marchand, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant A.P. (mother) challenges a juvenile court's order denying her reunification services pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(10) and (b)(11), as to her son, B.F. (the child). She contends that the court erred in denying her services since there was insufficient evidence to identify the issues that led to the removal of the child's siblings and to show that she did not make reasonable efforts to treat the problems that had led to their removal. We affirm.

## PROCEDURAL BACKGROUND

On July 20, 2020, the Riverside County Department of Public Social Services (DPSS) filed a section 300 petition on behalf of the child, who was six days old. The petition alleged that the child came within section 300, subdivisions (b) and (j). Specifically, it alleged that mother had unaddressed mental health issues, that she had a history of abusing controlled substances and continued to do so while pregnant, and she had not benefitted from previously provided treatment. It further alleged that mother had a prior child welfare history due to substantiated allegations of general neglect, she was previously provided reunification services but failed to benefit from them, and her parental rights as to the child's half siblings were terminated. The petition also alleged that the child's sibling, A.F., had been abused or neglected, and the child was at risk of similar harm.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

*Detention*

The social worker filed a detention report and stated that DPSS received a referral alleging general neglect on July 15, 2020. The reporting party said the child's father (father)[2] admitted on July 10, 2020, to relapsing and using methamphetamine. It was believed mother was also back using drugs. The social worker contacted the person handling mother's dependency case regarding her son, A.F.—social worker Munoz. Social worker Munoz reported that mother tested positive for methamphetamine and marijuana in May 2020. Munoz also said the counselor from the Family Preservation Court was concerned that mother was using drugs, as evidenced by her turning the camera off during video chats, or if the camera was on, the room was dark. Mother also appeared to be under the influence during one session. Social worker Munoz further reported that mother was denied reunification services with regard to A.F. on November 3, 2019, and that she had a prior case where her three other children were adopted.

The social worker visited mother at the hospital. Mother admitted that she had a substance abuse history. The social worker asked when she last used methamphetamine, and mother said November 2019. When confronted with the report that she tested positive for marijuana and methamphetamine in May 2020, mother said, "it was an accident" since she did not know the cookie she ate had marijuana in it. She further said the vape pen she used was laced with methamphetamine. Mother said she enrolled in the Family Preservation Court program on January 1, 2020. When the social worker

---

[2] Father is not a party to this appeal.

informed mother about the Family Preservation Court counselor's concern she was using narcotics, mother said she did not even know how to turn off her camera during video chats, and the room was dark because the curtains were closed since she did not want to wake up the person who was sleeping in the room where she was staying. As to her appearing to be under the influence during one session, mother said she simply was not feeling well.

The social worker spoke with someone from the Family Preservation Court who indicated that mother and father (the parents) were in phase I of the program. She said mother was drug tested on June 30, 2020, and July 8, 2020, and the results were negative.

The court held a detention hearing on July 21, 2020. Mother's counsel argued that there was no justification for removal of the child, and mother was prepared to follow any orders of the court. The court replied that it had "been through this multiple times with [mother]," and it "[had] been making orders for Mom for years and she didn't follow any of them yet." The court noted that mother had another child in 2019, which it allowed her to keep on family maintenance. That child was removed via section 387 because the parents relapsed. The court stated that "these parents have been in front of me for a long period of time," and mother had already had several children removed from her care and one who was still a dependent. It stated that "Mom is a meth user" and "nothing this court has done for years has been sufficient to get us to the point where I'm confident that I can leave this baby in Mom's care." The court then found a prima facie showing had been made and detained the child in foster care.

4

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on August 6, 2020, recommending that the court sustain the petition and declare the child a dependent. The social worker recommended offering reunification services to father, but denying services to mother pursuant to section 361.5, subdivision (b)(10) and (b)(11).

The social worker reported that mother had a dependency history with three children from another father. Mother had a case involving I.S., E.S., and I.P. (the children), with court involvement from 2015 through 2018 "due to concerns with respect to the mother's substance abuse, a history of being unavailable to medical professionals and school personnel . . . ongoing issues with head lice, and the legitimacy of her need for medicinal marijuana." The social worker further reported that on April 17, 2015, DPSS received a referral alleging general neglect and caretaker absence regarding E.S., who was autistic and had seizures. He had an allergic reaction, and it took 30 minutes to get a hold of mother. She arrived one and one-half hours later and was overheard saying, "I can't believe how drunk I am." The court made prima facie findings on May 14, 2015, under section 300, subdivisions (b) and (g). It held a contested jurisdiction/disposition hearing on July 1, 2015, and found the allegations true. It denied reunification services to the father but offered them to mother. The court held a six-month review hearing on December 30, 2015, and continued mother's services. The court continued services through the 12-month hearing and then terminated them at a contested 18-month hearing. The court terminated parental rights on May 24, 2017, and the children were adopted on June 29, 2018.

The social worker also reported on the dependency case regarding A.F. In that case, DPSS received a referral alleging general neglect on April 8, 2019. Mother gave birth and tested positive for amphetamines and marijuana, although the baby tested negative. She denied any illegal drug use and said she "did not know how she tested positive for amphetamines" and that she had a medical marijuana card. The court held a detention hearing on June 20, 2019, and found a prima facie case that A.F. came within section 300, subdivisions (b) and (j). The court did not detain him from the parents at that time. However, it ordered DPSS to file a petition for removal immediately if mother or father missed any drug test or tested positive. On July 16, 2019, the court held a jurisdiction/disposition hearing and allowed A.F. to remain with the parents under a plan of family maintenance. DPSS provided referrals for substance abuse services throughout the course of their case. The social worker further reported that on November 13, 2019, the court held a contested section 387 detention hearing. It ordered reunification services for father, but denied mother services under section 361.5, subdivision (b)(10) and (b)(11), due to her continued use of methamphetamines. A.F. was a dependent.

With regard to the instant case, the social worker expressed concern that mother failed to benefit from her previous services and that she and father continued to minimize or deny their drug use. She further reported that social worker Munoz received a progress report from the Family Preservation Court for the period of July 23, 2020, through July 28, 2020, which indicated that mother had not reported the completion of any steps in the 12-step program and that she was currently in phase I. The report showed that mother was participating in a 12-step support group, a "Living in Balance"

6

program, group and individual counseling, and drug education. Mother submitted proof of attending self-help meetings and negative drug test results. She subsequently completed the requirements of phase I and moved on to phase II.

The social worker again noted that although mother was enrolled in the Family Preservation Court program, she tested positive for methamphetamine and marijuana as recently as May 2020, and she still required drug treatment. The social worker contacted social worker Munoz on August 3, 2020. Munoz said the parents were both participating in the Family Preservation Court Intensive Substance Abuse program and individual counseling at New Hope Christian counseling; however, there was concern they were not being compliant with the case plan services as evidenced by mother's positive drug test in May 2020 and father's positive drug test in July 2020.

On September 14, 2020, the court held a contested jurisdiction/disposition hearing. County counsel asserted DPSS's recommendation to sustain the petition, declare the child a dependent, grant services to father, and deny services to mother pursuant to section 361.5, subdivision (b)(10) and (b)(11). Mother's counsel asked the court to grant mother services, arguing there was clear and convincing evidence that doing so would be in the child's best interest. He pointed out that mother moved up from phase I to phase II in her Family Preservation Court program. He acknowledged that she had a relapse in May 2020, but stated that it was "such a long time ago" and added that she "phase[d] up" after that. He noted that mother had been testing negative, was focused, was attending her groups and therapy, and "she reports good things about her psychiatry and her medication." Counsel further argued that mother completed a parenting program, and her

7

therapist reported that she had a positive attitude and was making progress in her case plan goals.

County counsel asserted that the child's sibling, A.F., was born in April 2019, and tested positive for methamphetamine.[3] At that point, mother had already had her parental rights terminated for three other children in 2017 due to her substance abuse issues. Yet, the court left A.F. in the parents' care so they could participate in family preservation. Although mother was enrolled in the Family Preservation Court program, she began missing drug tests and ultimately tested positive for methamphetamine. She initially denied using but later admitted to a "one-time relapse." The court removed A.F. pursuant to a section 387 petition and then bypassed her services under section 361.5, subdivision (b)(10) and (b)(11), in November 2019. County counsel then stated that even though the child in the instant case did not test positive at birth, he was born in July 2020, after mother had relapsed in May 2020. She made excuses for her methamphetamine use; however, her substance abuse history was lengthy and resulted in her losing custody of four other children, and she had not been able to demonstrate any long-term sobriety.

After hearing arguments, the court found the allegations in the petition true, declared the child a dependent, and granted father services. The court congratulated mother on her progress over the past four months but noted it was taking into account her substantial history over the last several years and her failure to successfully participate in services as to her other children, as well as the termination of her parental rights. It then

_____

[3] We note the social worker's report shows that A.F. tested negative.

denied her services pursuant to section 361.5, subdivision (b)(10) and (b)(11). The court added that she failed to meet her burden to show by clear and convincing evidence that it would be in the child's best interest to offer her services.

DISCUSSION

Substantial Evidence Supports the Court's Order Denying Mother Reunification Services

Mother argues there was insufficient evidence to support the court's order denying her reunification services under section 361.5, subdivision (b)(10) and (b)(11). She specifically claims the evidence in the record does not establish what protective issues led to the removal of the child's sibling/half siblings (hereinafter, siblings) in her other dependency cases, and the record is so minimal that the issues "cannot be discerned with any degree of certainty." She further argues that even if the record established that substance abuse was one of the issues that led to removal in her prior cases for which she failed to reunify and had her parental rights terminated, there was insufficient evidence to show she failed to make a reasonable effort to treat the issue. Respondent contends that mother waived these issues for failure to raise them in the trial court, and then proceeds to argue the evidence was sufficient. We need not decide the issue of waiver as we conclude the court's decision to bypass mother's services was supported by substantial evidence.

" 'As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.]' [Citations.] Section 361.5,

9

subdivision (b) sets forth certain exceptions—also called reunification bypass provisions—to this 'general mandate of providing reunification services.' [Citations.] [¶] Section 361.5, subdivision (b) 'reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody.' [Citations.] When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be ' "an unwise use of governmental resources." ' " (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)

Under section 361.5, subdivision (b)(10) and (b)(11), the court may deny reunification services to a parent who has failed to reunify with the child's sibling or half sibling or whose parental rights to the child's sibling or half sibling were terminated. Denial of services under these provisions requires the court to find that the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent." (§ 361.5, subd. (b)(10) & (b)(11).) The " 'reasonable effort to treat' " standard is not synonymous with " 'cure.' " (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464.) The parent's efforts must, however, be more than " 'lackadaisical or half-hearted.' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) Moreover, not every "effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating

10

the effort for reasonableness.  And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).)

"We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence.  [Citation.]  Under such circumstances, we do not make credibility determinations or reweigh the evidence.  [Citation.]  Rather, we 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121-1122 (*Jennifer S.*).)

A. *The Evidence is Sufficient to Establish That the Child's Siblings Were Removed Due to Mother's Substance Abuse*

Mother asserts the current section 300 petition alleged that she had a prior dependency history "due to substantiated allegations of general neglect, for which [she] was previously provided family reunification services in which she failed to benefit from resulting in termination of parental rights to older half-siblings"; however, the allegations do not specify the issues that led to removal or what services she received.  Mother points out that the record does not contain any documentation from the siblings' cases (e.g., minute orders, petition, case plan).  She concludes that the facts pertaining to her other dependency cases are "so minimal" that one cannot discern, with any certainty, what the issues were that led to removal.  Mother notes county counsel argued at the hearing that services should be bypassed since her parental rights were previously terminated due to

11

her substance abuse problems. However, mother claims that "the *only information* in the record suggesting that substance abuse may have been an issue in the prior case" is the summary of a general neglect referral from April 17, 2015, which reported that mother was overheard stating, "I can't believe how drunk I am." We disagree.

"It is true that, where there is a lack of information with respect to the circumstances of the prior dependency action, bypass of reunification pursuant to subdivision (b)(10) or (11) of section 361.5 may not be appropriate." (*Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1123.) While the record here does not contain the documentation from the prior dependencies that mother mentions, there are certainly facts in the record from which the juvenile court could infer that the child's siblings were removed due to mother's substance abuse. The record reflects that her three older children were removed "due to concerns with respect to mother's substance abuse . . . and the legitimacy of her need for medicinal marijuana." The record also shows that mother was provided with services for 18 months before they were terminated. Her parental rights were then terminated on May 24, 2017.

As to her most recent dependency, the record reflects that mother gave birth to A.F. and tested positive for amphetamines and marijuana in April 2019. The court allowed A.F. to remain in the parents' custody under a plan of family maintenance. The record indicates that DPSS provided referrals for substance abuse services throughout the course of the case. The court ordered DPSS to file a petition for removal immediately if mother or father missed any drug test or tested positive. It subsequently removed A.F. from the parents, pursuant to a section 387 petition, and denied mother services under

12

section 361.5, subdivision (b)(10) and (b)(11), due to her continued use of methamphetamines.

We further observe that the court was clearly familiar with mother's history, as it noted at the detention hearing that it had "been through this multiple times with her." The court noted that mother had another child in 2019, which it allowed her to keep on family maintenance. That child (A.F.) was removed via section 387 because the parents relapsed. It acknowledged that "Mom is a meth user." It even wondered what county counsel said to convince it to leave A.F. in the parents' custody, noting that DPSS "would have been well within their rights to ask [it] to not have given Mother an opportunity to reunify with that child."

In view of the record, we have no trouble concluding that substantial evidence demonstrates that the problems that led to the removal of the child's siblings included mother's substance abuse.

B. *The Evidence is Sufficient to Show Mother Failed to Make Reasonable Efforts to Treat Her Substance Abuse Problem*

Mother contends that even if the record establishes substance abuse was one of the issues that led to removal in her prior dependencies, DPSS did not meet its burden to show she had not subsequently made a reasonable effort to treat the problem. She also argues that in denying her services under the bypass provisions, the court erred in focusing on the level of success she had attained in her rehabilitation efforts rather than her efforts. Mother points out that she participated in and completed a residential treatment program from December 2019 to January 2020, and started receiving services

13

through the Family Preservation Court program. She asserts that apart from a relapse in May 2020, she "generally received positive reports from FPC."

The record does show that mother was accepted into a residential treatment program on December 2, 2019, and she successfully completed 57 days of treatment and was discharged on or around January 28, 2020. Nonetheless, she tested positive for marijuana and methamphetamine in May 2020. When confronted with her positive test results, she failed to take responsibility for her drug use and instead said it was an "accident." Thus, although she completed a residential program, she apparently did not benefit from it since she relapsed shortly thereafter and made untenable excuses for her drug use.

Furthermore, contrary to mother's claim, the court recognized her efforts. The record contains a progress report indicating that mother was participating in a 12-step support group, a "Living in Balance" group, counseling, and a drug education class, and that she tested negative. At the jurisdiction/disposition hearing on September 14, 2020, the court congratulated her for the progress she had made in the last four months and acknowledged that she had been engaging in the family preservation process "a lot more seriously than before."

In any event, while we agree with the court that mother's recent efforts are laudable, we have no difficulty concluding that substantial evidence supports the court's bypass order. Mother had a long history of substance abuse, participating in services, and relapsing. The record shows she received 18 months of reunification services in the prior dependency concerning her three older children, and her services were terminated in

14

January 2017. Subsequently, she tested positive for amphetamines and marijuana when A.F. was born in 2019. Mother denied any illegal drug use and "did not know how she tested positive for amphetamines" and said she had a medical marijuana card. DPSS provided her with referrals for substance abuse services; however, due to her continued use of methamphetamines, the court denied her reunification services as to A.F. Thus, despite receiving 18 months of services, she continued to use drugs and denied responsibility for her use.

Moreover, although mother was participating in the Family Preservation Court program, we note that the Family Preservation Court counselor was concerned she was still using drugs, as evidenced by her turning the camera off during video chats or if the camera were on, the room would be dark. Mother also appeared to be under the influence during one session. Furthermore, she tested positive for marijuana and methamphetamine as recently as May 2020, but simply excused it as "an accident."

Viewing the record in the light most favorable to the juvenile court's findings, as we must, we conclude there is substantial evidence to support the finding regarding mother's lack of subsequent reasonable effort. (See *R.T.*, *supra*, 202 Cal.App.4th at p. 915; *Jennifer S.*, *supra*, 15 Cal.App.5th at p. 1122.) The court properly considered the "duration, extent and context" of her efforts to treat her substance abuse problem. (*R.T.,* at pp. 914-915.) The juvenile court did not err in impliedly determining that mother's efforts were not reasonable in light of her long-term drug history and implausible excuses, which continued even when facing the unfortunate loss of her children. Furthermore, in light of her extensive history, the court properly found that mother failed

to meet her burden to show by clear and convincing evidence that it would be in the child's best interest to offer her services.  (§ 361.5, subd. (c)(2); *Jennifer S.*, at p. 1124.) Accordingly, it properly denied her reunification services pursuant to section 361.5, subdivision (b)(10) and (b)(11).

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>FIELDS</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>McKINSTER</u>
J.

16